Sarah Minton, Appellant, v. Irene Thompson Smith and Margaret Hamann, Trading as Minton Hat Company and Novelties, Appellees.

Gen. No. 37,417.

O'Connor, J., dissenting.

Opinion filed July 2, 1934.

Edwy Logan Reeves and Charles Francis Baker, for appellant.

PEABODY, WESTBROOK, WATSON & STEPHENSON and JOSEPH MCCORMACK, for appellees.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This appeal is by complainant, Sarah Minton, from an order which sustained a demurrer of defendants to her bill as amended, and dismissed same for want of equity, on the ground that the bill did not entitle her to any relief from the defendants. The bill was filed April 12, 1933, and alleged that complainant had spent her business life in the millinery trade; that many years ago she established a millinery business in Grand Rapids, Michigan, under the name of "Minton," and successfully carried on said business until 1904, when she moved to Chicago; that having acquainted herself with the situation at Chicago, she rented a store in the Drake Hotel building, which she fitted up and stocked with merchandise, employed help and placed her name of "Minton" on the store door and used that name on all business papers, as well as labels sewed on the goods manufactured by her, and informed the trade that she was in the millinery business under the name of "Minton."

The bill further alleges that as a result the name "Minton" obtained a reputation for high class goods; that the business grew and became very successful and she continued to conduct it at the same address for 10 years; that in the course of her business activities she employed among other persons defendants Irene Thompson Smith and Margaret Hamann and trained them in her business of manufacturing and selling goods; that on or about November, 1930, complainant was in poor health and decided for the time being that she would quit business until some future time; that she informed defendant employees of the situation, and that they, knowing the condition of her health, decided to establish a place of business of the

same kind and character at number 634 North Michigan avenue, and purchased fixtures from complainant and opened a place of business at that address; that complainant gave to them the right to use her name of "Minton" at said new address for one year; that she also moved her undisposed of merchandise to the new address and sold to defendants such portions of the merchandise as they might require to fill orders during the year 1931; that free of charge she assisted them from time to time in selling goods to customers; that on or about January, 1931, defendants purchased the remaining unsold merchandise from complainant, and that complainant at that time gave to them an extension of the right to use her name of "Minton" during the year 1932; that complainant also agreed that she would not re-engage in the millinery business in Chicago for one year from January, 1932; that she kept this promise but that on or about November 26, 1932, she notified defendants not to use her name of "Minton" after January 1, 1933; that defendants in December, 1932, offered to purchase the name from her but she informed them that the name was not for sale, she reserving the name in case she decided to go into business again; that defendants did not stop using the name, but pretended to change the name by changing the sign on the door to read in large letters, "The Minton" followed by smaller letters, "Hat Company and Novelties"; that on the stationery they used the name, "The Minton Co."; that complainant demanded that defendants stop using the name "Minton" in connection with the business carried on by them; that defendants ignored the demand and continued so to use the name without permission and contrary to the expressed demand of complainant.

Complainant further says that if she re-establishes her business under the name of "Minton," which she may do, "the unauthorized use of her name by the

defendants will cause confusion and loss of business to the complainant; that the change in the sign made by the defendants is a pretext as to change, and a device to use the name of 'Minton' so as to get the benefit of the good reputation which the complainant established for her name in business''; that unless defendants are enjoined from using her name of ''Minton'' in connection with their business, complainant will suffer irreparable damages and be interfered with in re-engaging in the millinery business under her trade name of ''Minton.'' The bill prays for an injunction and for other and further relief.

On June 19, 1933, complainant filed an affidavit in support of her motion that an injunction issue. The order sustaining the demurrer and dismissing the bill was entered, while said motion was pending on January 2, 1934.

Complainant contends, citing *Kallista v. Ahalt,* 151 Ill. App. 60, and *Schlitz Brewing Co. v. Travi,* 179 Ill. App. 269, that under these circumstances it was error to sustain the demurrer; that it should have been overruled and defendants ruled to plead or answer. The cases cited refer only to a situation where the bill alleges facts, which, if true, would entitle complainant to the relief prayed, and are not controlling here. The actual question for decision, therefore, is whether the facts alleged in the bill state a cause of action cognizable by a court of equity.

The facts disclosed by the bill are not complex. Complainant avers in substance that she devoted many years to a business in which she made use of her surname, ''Minton,'' as a trademark. She says in substance that without selling the business she granted to defendants the right and license to use that name for a limited period only; that the time for which it was granted has expired and that she now desires to resume her right with reference to the use of that

name in that business. It would seem upon this simple statement of facts that she ought to have that right. If the facts averred by the bill are true, defendants have received from complainant all and more than they bargained for. She is in court with clean hands. She seeks to protect the right to use her surname, defendants denying this right for a number of technical reasons. They say, in the first place, citing authorities such as *Olin v. Bate,* 98 Ill. 53; *Pfaudler v. Pfaudler Co.,* 186 N. Y. S. 725; *Carney Hospital v. McDonald,* 227 Mass. 231; and *In re A. G. Spalding & Bros.,* 27 App. D. C. 314; *Brown Chemical Co. v. Meyer,* 139 U. S. 540, and similar cases, that she has no legal right to appropriate her surname as a trade-mark; that there is no such thing as a trade-mark in gross. They say that there is no averment in the bill that defendants are using plaintiff's real name, "Sarah Minton." The contention is (apparently) that if she used her Christian name and surname she would be entitled to protection, but since she used the surname alone she is not entitled to such protection. The cases cited do not, we think, sustain this view. *Olin v. Bate,* 98 Ill. 53, is a case where the question arose between parties having the same surname. That is not the case here. It is true that in the *Spalding* case it was held that a surname might not be appropriated as a trade-mark under the Trade-mark Act, but we understand the purpose of this statute was to protect persons who might have the same surname, and not to grant to other persons indiscriminately a license to use and appropriate. *Pfaudler v. Pfaudler Co.,* 186 N. Y. S. 725, was an action at law for damages based upon a statute of the State of New York. Moreover, plaintiff there had acquiesced in the use by defendant corporation of his surname for 25 years and no equitable injury was stated. *Carney Hospital v. McDonald,* 227 Mass. 231, was also in part based upon

the construction of a Massachusetts statute and was not brought by any person whose surname was alleged to have been improperly used. In *Brown Chemical Co. v. Meyer, supra,* the court said an ordinary surname could not be appropriated *"as against others of the same name."*

The courts have been at all times vigilant to protect the rights of individuals to the exclusive use of their own names as against persons holding other names or corporations which undertake to appropriate their names. These cases naturally arise out of actual competition, usually, but the cases do not indicate that relief is limited exclusively to cases where there is competition, nor that the surnames of individuals are excluded from the protection of the courts. As illustrative may be cited *Ranft v. Reimers,* 200 Ill. 386; *Hazelton Boiler Co. v. Hazelton Tripod Boiler Co.,* 142 Ill. 494; *Allegretti v. Allegretti Chocolate Cream Co.,* 177 Ill. 129; *Johnson Mfg. Co. v. Johnson Skate Co.,* 313 Ill. 106. That the courts of other States—those of the United States and of England—apply similar rules will appear from the citations in our opinion in the recent case in this court of *Lomax Co. v. Lomax Bros Beverages, Inc.,* 274 Ill. App. 661 (Abst.).

In *Ohlbaum v. Correa,* 166 N. Y. S. 89, it appeared two brothers were in business under the name Ohlbaum Bros.; the partnership was dissolved and the business continued by one of them who, by agreement, took the right to use the firm name; this continuing partner died and no other person had acquired the right to use the name; the defendants (none of whom bore this name) began to use it in their business. It was held that the plaintiff, a brother, was entitled to injunctive relief. The court said: "Even after a man has surrendered to another the right to use his name in business, he still preserves sufficient interest in it to prevent its use by any casual stranger. Of course, there

may be circumstances under which the defendants can justify the use of the firm name in question. If these are alleged, they will constitute a possible defense to the action. But no such circumstances are pleaded, and we may not call upon our imagination to supply them.'' In *Christy v. Murphy,* 12 Howard's Pr. Rep. (N. Y.) 77, it was held that Christy, who had organized a group of negro minstrels to which he gave the name ''Christy's Minstrels,'' would be protected by injunction in the use of the name as against strangers who attempted to appropriate it to their own use although complainant was not at that time actually giving performances. In *Scheer v. American Ice Co.,* 66 N. Y. S. 3, the plaintiff sold his ice business to defendant corporation; the contract did not convey the right to use plaintiff's name but plaintiff agreed not to engage in the ice business for 10 years; the defendant printed plaintiff's name on its wagons, etc. An injunction was granted, the court saying that in the absence of express agreement defendant was not entitled to use plaintiff's name in its business, citing *Howe v. Searing,* 6 Bosw. 354; *Reeves v. Denicke,* 12 Abb. Prac. (N. S.) 92; *Morgan v. Schuyler,* 79 N. Y. 490, and note 35 Am. Rep. 546. The court said: ''It would seem to be a proposition hardly requiring argument that every man is the custodian of his own reputation and is entitled to say who shall do business, and what business shall be done, under his name. If it were necessary, however, to point out specific and substantial injuries to which the plaintiff is exposed by reason of the unauthorized acts complained of, it would not be difficult to do so. He is, for example, subject to the cost and vexation of suits that might be brought against him by reason of things that may happen in the business carried on in his name.'' That a right to use the names under which a corporation did business could not be again assigned by the assignee without the

consent of the assignors, and that an injunction would lie to prevent the use of the name by a corporation, see *Bagby & Rivers Co. v. Rivers,* 87 Md. 400. And that such a right is personal and does not pass to an assignee in bankruptcy, see *Mattingly v. Stone* (Ky.), 12 S. W. 467.

It is quite impossible in this opinion to discuss at length all the cases bearing upon this subject. To summarize, it may be said that the defendants contend that complainant cannot maintain her suit because she cannot get a property right in her surname. As we understand, the cases all hold the contrary. Secondly, it is contended that she may not maintain her bill unless she operates a competitive business. In addition to the cases we have cited holding the contrary may be mentioned the leading case of *Edison v. Edison Polyform & Mfg. Co.,* 73 N. J. Eq. 136, 67 Atl. 392. Third, a similar contention is made that the bill cannot be maintained in the absence of an actual use of the name by plaintiff. The obvious answer is that complainant is using the name every day and that the cases holding an actual use indispensable are not applicable to cases of this character. In the fourth place, it is contended that complainant cannot maintain her bill in the absence of an averment of fraud. The answer, we think, is that one to whom has been granted a license to use the name of another in business transactions for a limited time who undertakes to appropriate and convert to his own use permanently the name so granted, and thus deprive the licensor of her rights is guilty of fraud. In other words, the facts averred in the bill are sufficient to constitute fraud upon complainant.

We hold that the court erred in sustaining the demurrer to the bill and dismissing the same for want of equity, and for that reason the decree will be re-

versed and the cause remanded for proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

McSurely, J., concurs.

O'Connor, P. J., dissenting: In my opinion the decree sustaining the demurrer and dismissing the bill should be affirmed. Complainant in her bill alleges that ''if she re-establishes her business under her trade name of 'Minton' which she may do, that the unauthorized use of her name by the defendants will cause confusion and loss of business to the complainant.'' This allegation is substantially stated in the majority opinion but about a page further on in the opinion, after stating that the time for which complainant granted defendants the right to use the name ''Minton'' has expired, it is said: ''and that she now desires to resume her right in reference to the use of her name in that business.'' There is no such allegation in the bill. If there were, a different question would be presented for our decision. Nowhere is there any allegation that complainant intends to again go into the millinery business. The most that can be said is that she may some time in the future desire to do so. Nor is there any allegation that defendants are conducting their business dishonestly or that they are doing anything that would in any way injure complainant's reputation or character, or injure or damage her financially or otherwise.

A case almost in point is *Goldman v. Bootman,* 167 N. Y. S. 196, where it was said that a temporary injunction restraining the violation of an agreement by the seller of a business not to engage in the same business would be denied where the buyer had abandoned the business purchased from the defendant. In that case a temporary injunction was issued restraining the defendant from engaging in the refrigerator or warehouse business within a radius of 25 miles of the

city hall in New York City. The defendant was formerly engaged in that business and sold out to the plaintiff, stipulating not to engage in that business within 25 miles of the city hall. Thereafter, the defendant accepted a position as managing clerk for the Standard Cold Storage Company within the prohibited area. The court said: "We are of opinion that this injunction should not have been granted, for the reason that the plaintiff has abandoned this business. Not only has he abandoned it, but his only claim to possible injury lies in his allegation that he 'intends to resume the business as soon as he conveniently can.' If he were now engaged in the business thus purchased, or even if he should resume the business, notwithstanding a temporary abandonment, he would apparently have the right to enjoin the defendant from acting contrary to his covenant. In view of his abandonment of the business, however, no harm can come to him by the act of the defendant in engaging therein."

In this case complainant has abandoned the millinery business, and her one allegation of damages is "that if she re-establishes her business under her trade name of 'Minton' which she may do, that the unauthorized use of her name by the defendants will cause confusion and loss of business to the complainant." It will be noted she does not allege she is going to enter again into business but may do so if she so desires at some indefinite time in the future. When that time arrives, as was said in the *Goldman* case, *supra* (167 N. Y. S. 196), it will be time to consider her contention that the defendants be enjoined.

Moreover, complainant alleges in her bill that she gave the defendants the right to use her name to January 1, 1933, but there is no allegation that the defendants agreed not to use the name after that time. (See *Pfaudler* case, 186 N. Y. S. 725.)

Complainant's bill does not involve the question of unfair competition as said in the case of *N. L. Pierce Nat. Detective Agency v. Pierce Detective Agency,* 217 Ala. 594, 117 So. 191–193, where the question involved was somewhat similar to the question in the case before us. The court said: "To grant an injunction under these conditions would merely injure respondent and the public without any compensating advantage to complainant. No monopoly of the name can be claimed where there is no competing business to be protected."