EDWARD L. McDONALD and Wife, LOUISE Mc-
DONALD, d/b/a JULIAN'S SHOE STORE, v. PAS-
CAL J. JULIAN.—348 S. W. (2d) 749.

Middle Section. April 7, 1961.

Certiorari Denied by Supreme Court July 26, 1961.

428

James M. Hunter, Gallatin, for appellants.

Robert F. Brinkley, Gallatin, for appellee.

HUMPHREYS, J.  In this suit the Chancellor, upon an original bill for that purpose, after overruling a demurrer to the bill, entered a decree enjoining defendants from using complainant's surname, "Julian", in connection with the advertisement and operation of their retail shoe store in Gallatin, Tennessee.  Defendants have appealed and assigned a number of errors which raise in substance these propositions: that the Chancellor erred in overruling their demurrer based on the ground the bill was without equity; erred in granting an injunction because this was contrary to the law and the facts of the case; erred in holding that the Court had jurisdiction because no demand was made or proved for more than $50, as contemplated by sec. 16-603, T.C.A.

The facts of the case are few, simple and uncontradicted.  In October, 1954, defendant Edward L. Mc-Donald and John Witherspoon formed a partnership to

conduct a retail shoe store in Gallatin, Tennessee. At that time, complainant Pascal J. Julian was employed by Witherspoon in connection with a retail-wholesale shoe business. Julian had an established clientele in the shoe business and was experienced and enjoyed a good reputation in that business. Because of this, McDonald and Witherspoon employed him under an agreement that the business would be operated under Julian's surname, and would be known as "Julian's Shoe Store"; that complainant would receive a salary and percentage of the profits; that Julian's surname would be used as the name of the business only as long as he continued to be connected therewith. In February, 1955, Witherspoon sold his interest in the business to defendants. Complainant continued to work for these two parties and to manage the store, under the same contract, until August 15, 1955, when he withdrew from the business and requested defendants to cease using his name therein. Complainant withdrew from the business and requested his name no longer be used in connection therewith because, although the business was operating at a profit, the defendants were using these profits in other business ventures and creditors of the shoe store were threatening to sue him for the debts of the business on the valid assumption that since the business was being operated in his name and he had purchased shoes for the business he was one of the owners. Additionally, it appears defendants were interested in using complainant's name in connection with other business ventures, possibly the sale of beer, which the complainant found objectionable for personal reasons. It also appears from the record that the name Julian, although bearing a good reputation in Gallatin and in the trade area around Gallatin, is an

uncommon name, and one which could be, in that territory, only associated with complainant since he is the only Julian whose name appears in the telephone directory and is the only Julian whose surname is used publicly in connection with any retail business operating in the Gallatin trade area.

We think on these facts the Chancellor was warranted in sustaining complainant's bill and in granting injunction as prayed therein unless in so doing he violated sec. 16-603, T.C.A. Certainly, in view of the contract by which it was agreed that the name Julian would not be used in connection with the business if complainant should find it necessary to withdraw therefrom, and in view of the facts showing that complainant's good name was being damaged by its continued use and association with the retail shoe business operated by defendants, and since it would be virtually impossible to arrive at a satisfactory basis of monetary recompense for the harm and injury and damage complainant could sustain in such a situation as this, the Chancellor was fully warranted in ordering the injunction unless injunctive powers cannot be used for this purpose, or he was without jurisdiction because of the amount involved.

■ Without going into great detail, we hold upon the authority cited in the Chancellor's excellent memorandum opinion, and particularly upon the authority of M. M. Newcomer Company v. Newcomer's New Store, 142 Tenn. 108, 217 S. W. 822 (which we agree is by no means upon all fours with the appeal under consideration but which does state certain general principles which we conceive to be applicable), and upon the authority of 65 C. J. S. Names sec. 13, and Minton v. Smith, 276 Ill. App. 128, that a chancellor may use his injunctive powers to pre-

vent the wrongful use of an individual's surname in a case involving wrongful use of that name in trade and business or in case of special injury to reputation or to the value of the name as property. It is the rule that while an individual ordinarily has no exclusive right to the use of his own name, he is entitled to the protection of the law with respect to the use of that name in cases involving its use in trade or business, or where special injury to character, reputation, or property is involved, 65 C. J. S. supra. The fundamental notions of fairness and rightful conduct upon which this rule is predicated are the basis of our Supreme Court's decision in Robinson v. Storm, 103 Tenn. 40, 52 S. W. 880, wherein an injunction prevented a party from using his own name in such a manner as to work wrongful injury upon others. Certainly, this being the rule, a court of chancery has power to protect one whose surname is being used in connection with a business enterprise in violation of a valid contract and in such manner as to jeopardize the value of that name in a trade area and so as to deceive or mislead the public as to the continued connection of the owner of the name with the business establishment. We overrule the assignments relating to this proposition.

This leaves only the question whether the Chancellor was empowered to make a decree in view or sec. 16-603, T.C.A., which provides in general that chancery court has no jurisdiction of any debt or demand of less than $50 except in certain instances. We believe this contention must be denied. The record shows the value of complainant's name in a business would far exceed $50, and that, necessarily, its injury, or the injury or damage or harm that could be done it, could and would result in

the loss of more than this amount to complainant. To illustrate: John Witherspoon testified that complainant Julian had worked for him for approximately three and one-half to four years. That for a period of fifteen to twenty years he had had some twenty-five or thirty employees and that "Julian's name was the most valuable name I ever had in my business from the pulling standpoint". On the basis of being able to obtain complainant Julian to operate the business and to use his name, he signed a note for $5,000 to go into the shoe business as a partner with McDonald. The proof with respect to the value of the name Julian is, further, that in order to secure the use of Julian's name and services, he was paid first $50 and then $60 per week and ten per cent of the net profits of the business. Additionally, on cross-examination in reply to inquiry in regard thereto, Julian stated his name and the use of it was "very valuable" to him; that he wanted to use his name in connection with a place of business of his own.

From all of these facts and from the whole record, we are content that the rights sought to be protected by complainant in this suit are well worth the value of $50 or more and that the Chancery Court had jurisdiction to entertain the suit and award relief.

All of the assignments having been considered and no fault found with the Chancellor's decree, it is affirmed with costs.

Hickerson, J., not participating.

Shriver, J., concurring.