M. M. Newcomer Co. *v.* Newcomer's New Store *et al.**

· (*Knoxville.*   September Term, 1919.)

1. **TRADE-MARKS AND TRADE NAMES.** Right of natural person to use family name in conducting business not unlimited and may not be used to work a fraud.

The right of a natural person to the use of his family name in conducting any business although such use be detrimental to other individuals of the same name, is not unlimited, and he cannot resort to any artifice or contrivance intended to delude the public as to the identity of his business or products, or combine his name with others to work a fraud. (*Post, pp.* 116-118.)

Cases cited and approved: Wood et al. v. Wood, 78 Ore., 181; Russia Cement Co. v. Le Page, 147 Mass., 206; International Silver Co. v. William Rogers Corp., 2 Ann. Cas., 407; Martell v. St. Francis Hotel Co., 16 Ann. Cas., 593; Baker v. Gray, 192 Fed., 921; Aetna Mill, etc., Co. v. Kramer Milling Co., 82 Kan., 679; World's Dispensary Medical Ass'n v. Pierce, 138 App. Div., 401; Chickering v. Chickering, 120 Fed., 69.

Case cited and distinguished: Stix, etc., Dry Goods Co. v. American Piano Co., 211 Fed., 271.

2. **TRADE-MARKS AND TRADE NAMES.** Corporation may not adopt name similar to trade-name or person or concern previously engaged in similar business.

A corporation may not adopt, as its name, a name similar to the trade-name of a person or concern previously engaged in a similar business, where such adoption would have the effect of deceiving or misleading the public. (*Post, pp.* 118-120.)

---

*On limitation of right to use one's own name as a tradename, see note in 1 L. R. A. (N. S.), 660; 28 L. R. A. (N. S.), 934, L. R. A., 1916C, 255.

On right of members of organization to protection in use of name which their efforts have made valuable, see note in 28 L. R. A. (N. S.), 458.

M. M. Newcomer Co. v. Newcomer's New Store.

Cases cited and approved: Gramm Motor Truck Co. v. Fisher Motor Co., 30 Ont. L. Rep., 1; British-American Tobacco Co. v. British American Cigar Stores Co., 211 Fed., 933; General Film Co. v. General Film Co., 237 Fed., 64; Mobile Transfer Co. v. Schwarz, 195 Ala., 454; Bender v. Bender Store, etc., Fixture Co., 178 Ill. App., 203; Dyment v. Lewis, 144 Iowa, 509; Finney's Orchestra v. Finney's Famous Orchestra, 161 Mich., 289.

Cases cited and distinguished: J. I. Case Plow Works v. J. I. Case Threshing Mach. Co., 162 Wis., 185; Munn v. Americana Co., 82 N. J. Eq., 63; Mobile Transfer Co. v. Schwarz, 195 Ala., 454.

3. TRADE-MARKS AND TRADE-NAMES. Corporation may be enjoined from using a name similar to another's when likely to deceive the public, although the damage has not already been done.

It is not necessary to prove that the public had actually been deceived by the similarity of a name adopted by defendant corporation to that of plaintiff,̓ but it is the liability to deception and consequent injury which justifies enjoining the use of such name, and, if the court can see that confusion and deception are likely to result, it will not refuse injunctive relief because the damage has not already been done. (*Post, pp.* 120, 121.)

Cases cited and approved: Material Men's Mercantile Ass'n v. New York Material Men's Ass'n, 169 App. Div., 843; German-American Button Co. v. Heymsfeld, 170 App. Div., 416.

4. TRADE-MARKS AND TRADE-NAMES. Adoption of incorporator's name enjoined for fraudulent purpose to delude the public and injure complainant.

Where M. M. Newcomer and others incorporated the M. M. Newcomer company and later sold the stock and organized a corporation as "Newcomer's New Store," at a location near by, and entered the same or similar business, the latter will be enjoined from the use of the word "Newcomer," evidently adopted by the latter corporation for the fraudulent purpose of deluding the public and injuring the business of the former. (*Post, p.* 121.)

FROM KNOX.

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— HON HUGH M. TATE, Chancellor.

CHARLES H. SMITH, for appellant.

CULTON & STOOKSBURY and GREEN & WEBB, for appellee.

MR JUSTICE HALL delivered the opinion of the Court.

This cause presents a question of unfair competition by one mercantile corporation toward another.

The bill was filed by the complainant, a corporation conducting a mercantile business in the city of Knoxville, Tenn., for the purpose of enjoining "Newcomer's New Store," also a mercantile corporation, and the individual defendants, M. M. Newcomer, William M. Claiborne, J. W. Culton, E. C. Stooksbury, and N. R. Williams, its stockholders, officers, and directors, from carrying on a mercantile business similar to that conducted by the complainant, and in competition with the complainant, under the name of "Newcomer's New Store."

An injunction was issued under the prayer of the bill restraining the defendant corporation from using the name "Newcomer's New Store" in the conduct of its business. Whereupon, the defendants placed signs on their front door at 508 Gay street in the city of Knoxville, where said business was being conducted, advertising said business under the name of "Newcomer's Store." Then a supplemental bill was filed by complainant enjoining the defendants from using the name "Newcomer's Store." Whereupon, the defendants adopt-

ed for their business the name of "M. M. Newcomer in no way connected with the M. M. Newcomer Company or Newcomer's Department Store." Thereupon the complainant amended its supplemental bill, and the defendants were restrained from using the name "M. M. Newcomer" in connection with their business.

Upon the hearing of the cause these temporary injunctions were made perpetual, and from the decree of the chancellor the defendants appealed to the court of civil appeals, where said decree was affirmed, and the cause is now before this court upon the writ of *certiorari* for review of the decree of that court.

Prior to the incorporation of complainant, the business conducted by it was carried on by a partnership composed of the defendant M. M. Newcomer, and John E. Lewis, under the style of M. M. Newcomer & Co. The business was conducted at 402-410 Gay street. The stock in trade of the partnership consisted largely of ladies' ready to wear garments, but it handled also a general line of notions, etc. The business was established more than a quarter of a century ago, and has maintained the same name and location as is now maintained by the corporation, who conducts substantially the same business and handles the same lines of goods.

The corporation was organized and chartered in the year 1907 under the name the "M. M. Newcomer Company," for the purpose of taking over and continuing the business of the partnership which had theretofore existed. At the first corporate meeting in January, 1908, the defendant M. M. Newcomer, and his associate, Mr. Lewis, proposed in writing to sell to the

corporation all their title and interest in the partnership of M. M. Newcomer & Co., including the entire mercantile stock, stock fixtures, lease, contracts, accounts receivable, as well as "their name and good will," in consideration that certain stock in the corporation be transferred to them. This proposition was accepted by the corporation through its board of directors, and accordingly the entire interests of the partnership were transferred to the complainant. The defendant M. M. Newcomer became the vice president, secretary, and residential manager of the corporation, and continued actively associated with the complainant in the conduct of its business until the fall of 1918.

The complainant carried, at the time of the filing of its bill, and has carried for a number of years, a stock of merchandise of the value of about $100,000. It enjoys a very extensive trade, having a large list of customers in the city of Knoxville, and throughout East Tennessee, and in portions of Kentucky, North Carolina, and perhaps other States. It does a large mail order business outside of Knoxville in East Tennessee, and adjoining sections of the States named.

Under the management of the defendant M. M. Newcomer, its business was extensively advertised in the daily papers of Knoxville and other papers of East Tennessee, and by various other forms of advertisement costing many thousands of dollars, said business being advertised both in the newspapers and by placing signs on the front of the building and its front windows, and upon its delivery wagons. The names printed upon these signs were the same as used by the partner-

ship of M. M. Newcomer & Co., and were displayed by the defendant M. M. Newcomer as manager of said corporation, and are the same signs that are now being used by the complainant to advertise its business. On the front of the building was a sign in large letters, "M. M. Newcomer & Company, M. M. Newcomer & Company's Department Store, 41 Stories under One Roof," on the four large front windows on the second floor of the building in large letters appears the name "Newcomer," and on the delivery wagons in large letters appears the name "Newcomer's," and hanging out across the sidewalk from the front of the building is a large electric sign having on it the letters reading "Newcomer's."

The advertising conducted by the advertising manager under the direction of Mr. Newcomer, both for the partnership and the coporation, after it took over the business of the partnership, was done in the names "Newcomer's; Newcomer's in the Heart of Knoxville; All Cars Stop at Newcomer's," and "Newcomer's Department Store," for the reason, as the defendant Newcomer himself stated, that he knew if he could train the public to refer to that place as "Newcomer's" it would be much easier to attract them and lead them to trade than to try to teach them to use the trade-name of "M. M. Newcomer Company" or "The M. M. Newcomer Company," because to a great extent people in reading signs over places of business and looking through newspapers for advertisements look for the catch phrases instead of reading the small print.

8—142 Tenn.

The evidence shows that the complainant's business has become generally known to the trade, both retail and wholesale, under said advertised names; and likewise known to wholesalers and manufacturers in other cities under said names.

In the fall of 1918, the defendant M. M. Newcomer sold his stock in the complainant corporation and severed his connection therewith. He applied for and obtained a charter from the state under the name of "Newcomer's New Store," and in the month of October opened said store at 508 Gay street, selling to the retail trade ladies' ready to wear garments, which business, as before stated, was simular to that being conducted by the complainant, though the complainant did not confine its business exclusively to ladies' ready to wear goods.

It appears from the proof, and both the chancellor and the court of civil appeals found, that since defendant began business many packages of goods have come to the complainant addressed to "M. M. Newcomer" or "Newcomer's New Store," which did not belong to the complainant, but belonged to the defendant; that, upon the other hand, goods have frequently been received by the defendant intended for complainant by reason of the similarity of the names of the two corporations, and no little confusion has resulted to complainant by reason of this similarity of names. Both mail and telegrams have been confused in a similar manner, and orders intended for complainant have been received, and, in many instances, filled by the defendant. Both freight and express intended for complainant have

been received by the defendant, and complainant has been occasioned much delay and inconvenience by having its mail, freight, and express go into the hands of the defendant, and has been greatly annoyed by having orders intended for it filled by the defendant. This confusion, as the proof shows, has also caused dissatisfaction and complaint on the part of. complainant's customers; it appearing that defendant has received, on a number of occasions mail orders sent to complainant by its customers, and has retained such orders an unnecessary and unreasonable length of time before delivering the same to complainant. It appears that, notwithstanding the efforts of complainant to prevent this confusion, it has continued constantly. It is stated by a number of witness that the name "Newcomer," being so well advertised and known, was a valuable asset to complainant. It further appears that, notwithstanding the great confusion growing out of the similarity of the names of the two corporations, and the efforts of the complainant to prevent this confusion, the defendant persisted in retaining the name "Newcomer" in connection with its business, which fact, we think, showed a clear intention on its part to benefit by the extensive previous advertisement for a long period of years of said name in connection with the business of complainant. If this were not the intention and purpose of the defendant, then all of the confusion which has resulted to both complainant and the defendant could have been easily avoided by the defendant adopting a corporate name without the association of the name "Newcomer" therewith.

There is a concurrent finding by both the chancellor and the court of civil appeals 'that the persistent use by the defendant of the name ''Newcomer'' in connection with its business was for the purpose of misleading the public and inducing complainant's customers to patronize the defendant under the belief that they were patronizing the complainant.

While the rule generally obtains that a natural person has an unqualified right to the use of his family name in conducting any business, though such use be detrimental to other individuals of the same name, he cannot combine his name with others for the purpose of working a fraud. *Wood et al.* v *Wood,* 78 Or., 181, 151 Pac., 969, L. R. A. 1916C, 251, Ann. Cas., 1918A, 226; *Russia Cement Co.* v. *Le Page,* 147 Mass., 206, 17 N. E., 304, 9 Am. St. Rep., 685; notes to *International Silver Co.* v. *William Rodgers Corp.,* 2 Ann. Cas., 407; *Martell* v. *St. Francis Hotel Co.,* 16 Ann. Cas., 593; *Baker* v. *Gray,* 192 Fed., 921, 113 C. C. A., 417, 5B L. R. A. (N. S.), 899; *Stix, etc., Gry Goods Co.* v. *American Piano Co.,* 211 Fed., 271, 127 C. C. A., 639.

The extent to which an individual may use his own name is not unlimited. He cannot resort to any artifice or constrivance intended to delude the public as to the idenity of his business or products. *Stix, etc., Goods Co.* v. *American Piano Co.,* supra; *Ætna Mill, etc., Co.* v. *Kramer Milling Co.,* 82 Kan., 679, 109 Pac., 692, 28 L. R. A. (N. S.), 934; *World's Dispensary Medical Ass'n* v. *Pierce,* 138 App. Div., 401, 122 N. Y. Supp., 818

The court, in *Stix, etc., Dry Goods Co.* v. *American Piano Co.* supra, laid down the rule as follows:

"It is now settled beyond controversy that a family surname is incapable of exclusive appropriation in trade. The right of every man to use his own name in his business was declared in the law before the modern doctrine of unfair trade competition had arisen. It is part of the law of trade-mark. The subject may therefore be properly approached from that side. If, however, the name has previously become well known in trade, the second comer uses it subject to three important restrictions: (1) He may not affirmatively do anything to cause the public to believe that his article is made by the first manufacturer. (2) He must exercise reasonable care to prevent the public from so believing. (3) He must exercise reasonable care to prevent the public from believing that he is the successor in business of the first manufacturer. This duty to warn, however, must not be pressed so far as to make it impracticable for the second comer to use his name in trade. Otherwise we destroy under the law of unfair trade competition the very right which we saved under the law of trade-mark."

In the case of *Chickering* v. *Chickering*, 120 Fed., 69, 56 C. C. A., 475, the court held that the right to use a personal name in business, even one's own, is subject to the general rules in regard to unfair competition. A man must use his own name honestly and not as a means of pirating upon the good will and representation of a rival by passing off his goods or business as the goods or business of his rival who gave the name

its reputation and value.   No one will be permitted to use even his own name with the fraudulent intention of appropriating the good will of a business establised and built up by another person of the same name.

The rule is general that a corporation may not adopt as its corporate name a name similar to the trade-name of a person or concern previously engaged in a similar business, where its use of that name will have the effect of deceiving or misleading the public. *Gramm Motor Truck Co.* v. *Fisher Motor Co.*, 30 Ont. L. Rep., 1; *British-American Tobacco Co.* v. *British American Cigar Stores Co.*, 211 Fed., 933, 128 C. C. A., 431, Ann. Cas., 1915B, 363; *General Film Co.* v. *General Film Co.*, 237 Fed., 64, 150 C. C. A., 266; *Mobile Transfer Co.* v. *Schwarz*, 195 Ala., 454, 70 South., 640; *Bender* v. *Bender Store, etc., Fixture Co.*, 178 Ill. App. 203; *Dyment* v. *Lewis*, 144 Iowa, 509, 123 N. W., 244, 26 L. R. A. (N. S.), 73; *Finney's Orchestra* v. *Finney's Famous Orchestra*, 161 Mich., 289, 126 N. W., 198, 28 L. R. A. (N. S.), 458; *P. I. Case Plow Works* v. *J. I. Case Thrasing Mach. Co.*, 162 Wis., 185, 155 N. W., 128.

The court in this latter case, after reviewing the authorities, laid down the rule as follows:

"The legal principles which are controlling here are simply the principles of old-fashioned honesty.   One man may not reap where another has sown nor gather where another has strewn.   A man may manufacture and sell unpatented articles and use his own name in doing so, but, if another has previously and rightfully made that name valuable as a trade-name descriptive of the same kind of goods, he has created a property

right therein which may not be appropriated by a subsequent manufacturer, even though he bear the same name; and, if necessary to prevent that result, conditions and limitions upon the use of the name will be enforced by the courts, which will preserve to the first manufacturer the fruits of his industry and prevent the public from being misled. The extent of these conditions and limitations varies according to the circumstances of the case and is limited only by their sufficiency to accomplish the result named.''

In *Munn* v. *Americana Co.*, 82 N. J. Eq., 63, 88 Atl., 330, the court said:

''No corporation has the right, in assuming a name in which to carry on its business of publication, to adopt a name which *prima facie* and without explanation would fairly and reasonably indicate to a person dealing with it, of average and ordinary intelligence, that the work was the publication of another. The restrictions upon the selection and use of corporate names, or methods of business, tending to deceive the public, are independent of statutory restrictions and additional thereto, and may be enforced on behalf of persons (in this case other publishers) to whom the use of the name would occasion an injury."

In *Mobile Transfer Co.* v. *Schwarz*, supra, it was held that a person who assumed the name of a dissolved corporation of which he had been the receiver was entitled to an injunction restraining another corporation from using a simular corporate name. The court, in passing upon the question, said:

"Without deciding whether or not appellee had, or had acquired, the right to use the name of the insoloent corporation of which he was receiver, dissolved while he was acting in such capacity, or to use a name similar thereto, it is a sufficient answer to say that appellant does not claim under or through the rights of the dissolved corporation, or through any of its stockholders or creditors. In other words, appellant is a stranger to the defunct body corporate, and there is no evidence to show or tending to show that any fraud, wrong, or injury has ever been done or ever will be done the public, or to such stockholders or creditors, by the use of the borrowed name by appellee. Appellee's use of the corporate name, or of a similar name, gives appellant no right to use the business name of appellee."

It would seem that the rule is well established that a corporation must not by any artifice deceive the public so that its goods may be sold for those of a person or corporation having a similar trade name.

It has been held that it is not necessary to prove that the public has actually been deceived by the similarity in names. It is the liability to deception and consequent injury which justifies the issuance of an injunction. If the court can see that confusion and deception is liable to result from the similarity of names it will not refuse injunctive relief because the damage has not already been done. *Material Men's Mercantile Ass'n* v. *New York Material Men's Ass'n*, 169 App. Div., 843, 155 N. Y. Supp., 706; *German-American Button Co.* v. *Heymsfeld*, 170 App. Div. 416, 156 N. Y. Supp., 223.

M. M. Newcomer Co. v. Newcomer's New Store.

In the cause under consideration the evidence shows, and both the chancellor and the court of civil appeals found, that the complainant had been injured as a result of the defendant's use of its name, and as before stated, the use of the name "Newcomer" by the defendant was for the fraudulent purpose of deluding the public and injuring the complainant.

We therefore think that the court of civil appeals was correct in affirming the decree of the chancellor making the injunction against the defendant perpetual, and its decree will be affirmed, with costs.