**TIGRETT INDUSTRIES, INC., a Corporation, Plaintiff,**

v.

**TOP VALUE ENTERPRISES, INC., a Corporation, Defendant,**
and
**Plastic Block City, Inc., a Corporation, Intervenor.**

**Civ. A. No. 1248.**

United States District Court
W. D. Tennessee, E. D.

May 21, 1963.

Hewitt P. Tomlin, Jr., Waldrop, Hall & Tomlin, Jackson, Tenn., and Ralph W. Kalish, St. Louis, Mo., for plaintiff.

Jack Manhein, Hancock & Manhein, Jackson, Tenn., for defendant.

Theodore R. Scott, Ooms, McDougall & Hersh, Chicago, Ill., for intervenor.

BAILEY BROWN, District Judge.

This is an action filed by Tigrett Industries, Inc., a Delaware corporation with principal place of business at Jackson, Tennessee, against Top Value Enterprises, Inc., an Ohio corporation doing business at Jackson, Tennessee. Plaintiff seeks only injunctive relief against alleged trade-mark infringement and unfair competition.

Jurisdiction is grounded as to the alleged trade-mark infringement on 28 U. S.C.A. § 1338(a), and as to the alleged unfair competition both on § 1338(b) (pendant jurisdiction) and diversity of citizenship.

Plaintiff is a manufacturer of toys and related items and defendant is a trading stamp redemption firm. The merchandise that bore the allegedly infringing trade-mark was manufactured and sold to defendant by Plastic Block City, Inc., an Illinois corporation with principal place of business at Chicago, which is also a manufacturer of toys and related items. Plastic Block City, Inc., has intervened and taken over the defense of this action. Henceforth, plaintiff will be referred to as "Tigrett" and intervenor will be referred to as "Block City."

Tigrett is the exclusive licensee under a patent covering a recreational apparatus the purpose of which is to return a ball thrown against the apparatus. (Tigrett originally sued also for patent infringement but thereafter dismissed that count.) It is also the owner of the trade-mark "Pitch Back" which is on the principal register, and the trade-mark certificate describes the apparatus in connection with which it is used as comprising a combination baseball backstop and ball return apparatus. Tigrett contends that Block City has infringed its registered trade-mark and has been guilty of unfair competition by using the trade-mark "Pitch-N-Field" in connection with the recreational apparatus manufactured and sold by it.

Block City contends (1) that the registered trade-mark "Pitch Back" is invalid for the reason that it is merely descriptive of Tigrett's recreational apparatus, (2) that this trade-mark cannot be the basis of an unfair competition claim because it is descriptive and had not attained secondary meaning by the time Block City began using its trade-mark "Pitch-N-Field" and (3) that in any event its trade-mark does not infringe and its use is not unfair competition for the reason that its use is not likely to cause confusion or mistake or to deceive purchasers.

Shortly prior to September, 1959, Tigrett obtained the license to manufacture and sell the ball rebound device which was new on the United States market, consisting of a metal frame within which a netting is resiliently mounted (with springs or rubber bands) to provide a ball rebound surface. To the frame is attached an adjustable standard for controlling the angle of the netting and thus controlling the angle at which the ball rebounds. Therefore, when a ball is thrown into the netting, it will rebound, depending on the angle of the netting, as a fly ball, a line drive, or a grounder.

In September, 1959, Tigrett adopted the trade-mark "Pitch Back" for this device and then began its sales promotion by exhibiting the device under that name at the National Recreational Conference Exhibit at Chicago, which is the location of Block City's headquarters. During the remainder of 1959, Tigrett sold about 3000 units at a gross of about $10,000 and expended $2500 on publicity. In 1960, in January, Tigrett again displayed its "Pitch Back" device in Chicago at the National Sporting Goods Association Show and still again at Chicago in April at the Premium Show. In New York, in March, 1960, it displayed the "Pitch Back" device at the Toy Fair at the New Yorker Hotel where Block City also displayed some of its products and which exhibit was attended by its president. "Pitch Back" was the subject of a gratuitous feature article in an issue of a New York give-away magazine known as "Where", which was distributed during the Toy Fair.

"Sports Illustrated", a magazine of national circulation, contained advertisements of "Pitch Back" as did various newspapers in the spring of 1960. In the May 16, 1960, issue of "Life", another national magazine, there was a full page, gratuitous feature article dealing with "Pitch Back" with prominent display of the trade-mark, illustration of the apparatus, and Tigrett's connection with it. Moreover, in the spring of 1960, there were television commercials, and there were gratuitous television demonstrations on the "Tonight Show" by Jack Paar and on the "Today Show" by Jack Lascoule, both on national hookups. And, in the spring of 1960, prominent

baseball players, for a fee, endorsed "Pitch Back" publicly.

During the first six months of 1960, Tigrett's gross sales of "Pitch Back" amounted to over a half million dollars and for the entire year amounted to almost a million dollars.

Tigrett filed its application for the trade-mark "Pitch Back" on April 11, 1960 and the certificate was issued by the Patent Office on December 6, 1960.

Block City's president testified that he first heard of the type of apparatus involved here in September, 1959, through their New York sales representative, who reported to him that there were about thirty brands on the market. The sales representative did not testify nor was his failure to do so otherwise explained. The president also testified that Block City considered the matter again in the early part of 1960 and a sample of the product not manufactured by Tigrett was obtained in Chicago. The sample was not produced at the trial. Block City then decided to manufacture the product, checked a toy directory for the names being used in the field, and gave its trade-mark lawyers four names on which searches were made. The search, he testified, did not reveal "Pitch Back." "Pitch-N-Field" was selected and was used for the first time by Block City on its product on June 13, 1960.

■ While Block City's president denied that he and his associates had any knowledge of the trade-mark "Pitch Back" prior to June 13, 1960, the Court believes and so finds that they did have such knowledge prior to that date. The publicity attending the use of the trade-mark "Pitch Back" was too intensively and too generally disseminated to escape notice by those in that line of business.

There is no substantial difference between the merchandise marketed by Tigrett under the trade-mark "Pitch Back" and Block City under the trade-mark "Pitch-N-Field." For present purposes, the products are physically the same. Moreover, the packaging is the same, the suggested retail prices for equivalent models are the same, the geographical distribution, which is national, is the same, the trade channels are the same and the means of publicity are now the same. "Pitch-N-Field" is obviously in direct competition with "Pitch Back."

As stated, Block City's first line of defense is that the trade-mark "Pitch Back" is invalid for the reason, it asserts, that it is descriptive rather than arbitrary and fanciful when applied to this product. It is provided in 15 U.S. C.A. § 1052(e) (1), of course, that a trade-mark may not be placed on the principal register if it " * * * when applied to the goods of the applicant is merely descriptive * * *."

On the other hand, Tigrett contends that the trade-mark is not descriptive as so used and relies on Sec. 1057(b) which provides that the certificate of registration is *prima facie* evidence of the validity of the registration and of Tigrett's exclusive right to use the trade-mark.

The presumption of validity by registration has been held to be a strong one. In Aluminum Fabricating Co. v. Season-All Sales Corp., 259 F.2d 314 (2d Cir. 1958), the Court said in this connection at page 316:

"In the Lanham Act Congress made it clear that weight should be accorded to the actions of the Patent Office. The Act provided that "A certificate of registration of a mark * * * shall be prima facie evidence of the validity of the registration * * *." 15 U.S.C.A. § 1057 (b). We are of the opinion that this means not only that the burden of going forward is upon the contestant of the registration but that there is a strong presumption of validity so that the party claiming invalidity has the burden of proof and in order to prevail it must put something more into the scales than the registrant. In a case such as this, where it can be argued with equal force that a mark is descriptive and on the contrary that it is arbitrary and fanciful, the courts should not overrule the action of the Patent Of-

fice to whose care Congress has entrusted the preliminary determination as to whether a mark fulfills the requirements of the statute."

The Court also said at page 317:

" * * * It may well be that the many differing and irreconcilable views of the courts was one of the reasons which impelled Congress to write into the 1946 Act the presumption of validity from registration. At any rate nothing could be clearer than the fact that prior decisions were of little help, and that there was a need to give to the imprimatur of the Patent Office some real value."

On the other hand, in Shaw-Barton, Inc. v. John Baumgarth Co., Inc., 313 F.2d 167 (7th Cir. 1963), a case relied on by Block City, the Court said at page 169:

"It is well established that where descriptive words are used, the presumption of validity attaching to a registered trademark may be easily overcome. John Morrell & Co. v. Reliable Packing Co., 295 F.2d 314 (7th Cir. 1961)."

This Court does not understand the precise meaning of this last quotation. It would seem that the strength or quality of the statutory presumption should be the same in all cases, though in labelling the presumption we of necessity must deal in semantics. It is true, however, that the use of descriptive words is a factor making for invalidity.

■ This Court is inclined to follow the lead of the Second Circuit in the Aluminum Fabricating Co. case, supra, in holding that the presumption created by the statute is a strong one. This must have been the intent of Congress. So holding gives appropriate effect to expertise of the Patent Office. Moreover, a reading of some of the many cases dealing with the question whether a given trade-mark is descriptive or arbitrary and fanciful will demonstrate that there is a large twilight zone. As was said in General Shoe Corp. v. Rosen, 111 F.2d 95 (4th Cir. 1940) at page 98:

"Between these two extremes lies a middle ground wherein terms of mingled qualities are found. It cannot be said that they are primarily descriptive or that they are purely arbitrary or fanciful without any indication of the nature of the goods which they denominate."

While the Court must exercise an independent judgment, giving the presumption considerable weight will provide a means of solution of many of these problems.

At the outset it should be noted that the trade-mark was used on a new product at the time it was adopted. Moreover, it can hardly be argued that the words "Pitch Back" would without more call to mind this particular kind of apparatus.

In summary, Block City's position is that the words "Pitch Back" describe what the device does, that is, it "pitches the ball back to the thrower." But certain kinds of balls thrown against a solid wall will also come back, and yet they could not be said to have been "pitched" back. To describe this apparatus as a "Pitch Back" is fanciful in the sense that it involves an element of personification, for to catch a ball and throw it back brings to mind an agency that has consciousness and intelligence. As was said by the Court in the General Shoe Corp. case, supra, at page 98:

"Such terms, indeed, shed some light upon the characteristics of the goods, but so applied they involve an element of incongruity, and in order to be understood as descriptive, they must be taken in a suggestive or figurative sense through an effort of the imagination on the part of the observer. Many such suggestive terms have been approved as valid trade marks by the courts * * *."

Moreover, when using this apparatus, the ball may come back as a fly ball or a grounder and is not therefore a "pitch" as the word is normally used. And certainly the words "Pitch Back", or even their semantic equivalents, are not the

only words, as Block City contends, that could be used to describe what this apparatus does.

■ Accordingly, the Court finds that the trade-mark is not descriptive in the statutory sense when applied to the goods in question.

■ The remaining question is whether the use of the trade-mark "Pitch-N-Field" by Block City is likely to cause confusion or mistake or to deceive purchasers. It is not necessary, of course, for Tigrett to show that confusion has actually occurred (15 U.S.C.A. § 1114(1) (a) and cases cited thereunder).

As stated, the products are physically identical, and the packaging, suggested prices, geographical distribution, channels of trade, and means of publicity are the same.

Block City emphasizes the difference to the eye and to the ear. It also argues the difference in meaning of "Pitch Back" and "Pitch-N-Field", that Tigrett's trade-mark describes what the apparatus does while its trade-mark describes what the user does. Lastly, it argues that a descriptive word which is common to both trade-marks (here "Pitch") cannot be the basis of a finding of infringement.

Tigrett argues that the first word of the trade-mark is what draws attention, that purchasers do not concern themselves with the meaning of a trade-mark, that the whole effect of the trade-mark must be considered, and that a side-by-side comparison is not the test in this situation. It also argues that cases holding that a common descriptive word cannot be the basis of a finding of infringement are not applicable unless the common word describes the physical makeup of the product and are not applicable where the goods involved and the entire manner of operation of the suppliers are the same.

After reviewing the cases relied on by both parties, the Court has reached the conclusion that there is law to support each of their assertions, and in the last analysis, in determining whether there is likelihood of confusion, the Court should look to all of the factors of similarity, to the opportunity of the alleged infringer to have avoided the possibility of confusion, and the intent of the alleged infringer in adopting its trademark (Q-Tips, Inc. v. Johnson & Johnson, 206 F.2d 144 (3rd Cir. 1953)).

■ The Court has concluded that there is likelihood of confusion here. In making this judgment, the Court seeks to place itself in the shoes of a prospective purchaser, frequently a moppet, who has seen an advertisement or television commercial concerning "Pitch Back." If, when making a purchase, he is shown the same apparatus under the brand name "Pitch-N-Field", he might well mistakenly think he is getting the product he saw advertised.

■ Further, Block City knew that the name "Pitch Back" had already been pre-empted by Tigrett when it selected "Pitch-N-Field." It could have easily avoided the likelihood or even the possibility of confusion. It appears that, in choosing "Pitch-N-Field", Block City tried to come as close to "Pitch Back" as, in its judgment, it safely could. And as was said by Judge Goodrich in the Q-Tips, Inc. case, supra, at page 145:

> "It is worth pointing out, at the start of our discussion, that we are in a field where the tendency of the law 'has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists.' Restatement, Torts, Volume III, page 540. In any situation where the law is in the growing stage it is not to be expected that the advance in all courts will be simultaneous. Furthermore, when the final outcome on a given set of facts may vary, not with the legal concepts involved, but their application to particular states of fact, the pattern is inevitably less clear than in cases where a definite rule is to be applied."

■ Accordingly, the Court is of the opinion and so finds that defendant and

Block City have infringed Tigrett's trade-mark and have been guilty of unfair competition.

The injunctive relief prayed for is granted.