**VERSAR, INC., Plaintiff,**

v.

**VERTAC CHEMICAL CORPORATION, Defendant.**

**No. 83–2394 H(A).**

United States District Court,
W.D. Tennessee, W.D.

Aug. 9, 1983.

Agreed Order on Permanent
Injunction Nov. 3, 1983.

Kemper B. Durand, Memphis, Tenn., for plaintiff.

Allen T. Malone of Apperson, Crump, Duzane & Maxwell, Memphis, Tenn., for defendant; Edward G. Fenwick, Jr. of Mason, Fenwick & Lawrence, Washington, D.C., of counsel.

## ORDER ON PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

HORTON, District Judge.

This is a suit by plaintiff, Versar, Inc., against defendant, Vertac Chemical Corporation, alleging various claims relating to trademark infringement. These claims all arise out of defendant's manufacturing and marketing a product called "Versar," which allegedly infringes on plaintiff's trademark of the same name. This matter is currently before the Court on plaintiff's application for a preliminary injunction seeking to prevent defendant from further use of the trademark. Following an evidentiary hearing and after careful consideration of the record, the Court finds that injunctive relief is appropriate.

The plaintiff, Versar, is a Delaware corporation involved in environmental services, such as environmental inspections, hazards analysis consultation, clean-up and other similar activities. With its principal place of business in Springfield, Virginia, Versar performs environmental services for both regional and federal agencies and for private institutions and individuals. In the private sector, the plaintiff provides such services as inspections and hazard evaluations relating to ground water contamination, water purity and other activities of that type.

The plaintiff has been using the name "Versar" in connection with its business since the 1960s. The mark was registered with the U.S. Patent and Trademark Office in 1971 and again, for an expanded listing of goods and services, on January 5, 1982. It is also registered with the Secretary of State of the State of Tennessee.

The defendant, Vertac, is a Delaware corporation in the business of manufacturing and selling agricultural chemicals, primarily herbicides and fertilizers, with its principal office in Memphis, Tennessee. Since February, 1983, the defendant has used the name "Versar" in connection with the sale of a class of herbicides containing as their active ingredients either monosodium acid methanearsonate or disodium methanearsonate (commonly known as MSMA herbicides).

Although defendant has contended that it has always marketed its product with the composite name "Vertac Versar," the evidence is clearly to the contrary. The mark as actually displayed on the defendant's herbicide containers shows "Vertac" widely separated from "Versar" and presented in a different style of lettering and in a smaller size. In brochures marketing the herbicide, the two names are consistently used separately. The name "Vertac" is used to indicate the manufacturer and "Versar" is used as the actual name of the product. There is no doubt that the name "Versar" and not the composite name "Vertac Versar" has and is being used to market defendant's product.

Although plaintiff and defendant are not direct competitors, testimony in the evidentiary hearing nevertheless indicated that there is a strong likelihood of confusion, at least as to the source of the product "Versar." The primary concern of the plaintiff is that is has developed a strong reputation in the field of environmental services and that reputation is now threatened by defendant's production of a chemical marketed under the same name as that of plaintiff's company.

Plaintiff's principal customer is the Environmental Protection Agency. Plaintiff claims that any link between plaintiff and an arsenic-based herbicide could present major problems and have potentially disastrous effects on its business. Michael Markels, Jr., president of Versar, Inc., testified that his company has close to 50 contracts with EPA and that the area of environmental services is influenced by po-

litical and social concerns and Versar's customers are concerned about situations giving rise to even the appearance of a conflict of interest.

John P. Horton, the assistant administrator for administration at EPA until earlier this year, confirmed that the reputation of a company is a factor that is considered in awarding EPA contracts. Versar, Inc., he said is "very well respected" by the EPA.

Horton testified that he knew of occasions in which EPA acted or refused to act based on appearances of public perceptions of improprieties, even though there may have been no basis in fact for such appearances or perceptions. "So often in Washington, it's not what the facts are but what the perceptions are," he stated. Thus, based on Horton's testimony, it is quite possible that the defendant's manufacture of a herbicide marketed under plaintiff's name could have an adverse effect on plaintiff's business.

The Sixth Circuit in *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642 (6th Cir.1982), recently dealt with the issue of preliminary injunctions in trademark cases. In that case, the words "Big Boy" were being used by the defendant allegedly in violation of plaintiff's trademark. The plaintiff was successful in its efforts to obtain a preliminary injunction. The Sixth Circuit affirmed the district court's decision on that point. Judge Brown stated the legal standard as follows:

> There must be a showing of (A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Id.* at 651, quoting *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2nd Cir. 1981).

The court in *Elby's Big Boy* had no trouble finding irreparable harm since it found that plaintiff had a substantial financial interest at stake in the exclusive trademark, that plaintiff had incurred great expense in promoting the trademark, and that plaintiff's licensing program would be impaired if the defendant was allowed to continue its use of the trademark.

The plaintiff in the instant case has placed into the record evidence of essentially the same nature as that which justified the finding of irreparable harm in *Elby's Big Boy*. Plaintiff has developed consumer goodwill and at all times has apparently attempted to maintain an image of uncompromising sensitivity to the environment. In EPA contracts, plaintiff is required to certify in writing that it neither manufactures nor sells chemicals, and the testimony indicates that even an unfounded perception of a conflict of interest on the part of plaintiff could have an adverse effect on plaintiff's business.

Further, plaintiff claims an environmental disaster involving chemicals could be very detrimental even catastrophic to its business.

Defendant claims the plaintiff does not have a monopoly on the use of the word Versar. The defendant says it is not transgressing in the area of plaintiff's business and consequently there is no likelihood of success by the plaintiff on the merits of its case. In addition defendant claims the sole basis for plaintiff's claim of irreparable injury is speculation. It is, as defendant stated it, all visions in someone's mind.

Regarding irreparable harm, it should be noted that the courts generally seem to be somewhat more lenient in finding such harm in trademark cases than in other areas of the law. In another recent case, *Processed Plastic Co. v. Warner Communications*, 675 F.2d 852 (7th Cir.1982), the Seventh Circuit stated:

> This and many other Courts have often recognized that the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law (Citations omitted.) As this Court recently explained ..., this readiness to find irreparable injury arises in part from the realization that "The most cor-

rosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another."

*Id.* at 858 [quoting 4 R. Calmann "Unfair Competition, Trademarks and Monopolies," section 88.3(b) at 205 (3rd ed. 1970) ].

Regarding the likelihood of success on the merits, a review of the two primary federal statutes involved is helpful. 15 U.S.C. § 1114 states:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

The other major federal statute involved is 15 U.S.C. § 1125(a), which provides:

Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of such false description or representation.

The "key element in any infringement action is likelihood of confusion." *Hindu Incense v. Meadows,* 692 F.2d 1048, 1050 (6th Cir.1982). This is a primary consideration in either trademark infringement under 15 U.S.C. § 1125(a). *See Hindu Incense, id.,* and *Elby's Big Boy, supra.* This is particularly important in considering injunctive relief.

Although it is necessary to prove that the buying public was actually deceived in order to recover damages under [15 U.S.C. § 1125(a) ] ..., only a likelihood of confusion or deception need be shown in order to obtain equitable relief. (Citation omitted.) Here, since equitable relief is sought, only the likelihood of confusion need be shown, and not proof of actual confusion ....

*Id.* at 647. Further, the likelihood of confusion need not arise from intentional conduct.

[I]t is not necessary to show that any false description or representation is wilful or intentional. All that is required is that the representations or descriptions either be "false" or such as is "tending falsely to describe or represent the goods or services in question."

*Id.* (Citations omitted.)

The Sixth Circuit cited with approval a list of eight factors used by the Ninth Circuit in determining the likelihood of confusion:

1. strength of the plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;

4. evidence of actual confusion;

5. marketing channels used;

6. likely degree of purchaser care;

7. defendant's intent in selecting the mark;

8. likelihood of expansion of the product lines.

*Id.* at 648, quoting *Toho Company, Ltd. v. Sears, Roebuck & Co.,* 645 F.2d 788, 790 (9th Cir.1981).

The Courts have held that "evidence of actual confusion is not necessary to a finding of likelihood of confusion," but it is "nevertheless the best evidence of likelihood of confusion." *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.), cert. denied, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

 Further it is clear that "infringement may be found through the use of the registered mark upon non-competing goods having dissimilar descriptive properties." *Hindu Incense, supra* at 1051. Even if the products are not competitive, the issue is still whether there is a likelihood of confusion—if not as to the product itself, then as to the source of the product.

The trademark laws protect three interests which are present here: first, the senior user's interest in being able to enter a related field at some future time; second, his interest in protecting the good reputation associated with his mark from the possibility of being tarnished by inferior merchandise of the junior user; and third, the public's interest is not being misled by confusingly similar marks—a factor which may weigh in the senior user's favor where the defendant has not developed the mark himself.

\* \* \* \* \* \*

Absent equities in the junior user's favor, he should be enjoined from using a similar trademark whenever the non-competitive products are sufficiently related that customers are likely to confuse the source of origin.

*Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172–73 (2nd Cir.1976).

 The Court finds, based on the applicable criteria, that there is a likelihood of confusion regarding defendant's use of the mark "Versar," and that plaintiff has made a sufficient showing of a likelihood of success on the merits. Likewise, the record as a whole and the testimony elicited at the evidentiary hearing reflect an appropriate showing of irreparable harm.

The Court finds that injunctive relief is warranted in this case. The attorneys for the parties in this case are instructed to confer on this matter and attempt to agree upon an order setting forth in detail the restrictions of such an injunction. Since plaintiff has previously stated that it was willing to allow defendant to continue use of the "Versar" mark for the duration of the 1983 crop season, it is the Court's view that a specific date in the future should be agreed upon by the parties at which time defendant would discontinue the marketing and sale of its product under the "Versar" name. The attorneys are instructed to meet and submit such an order to the Court within 30 days from the date of this order.

It is so ORDERED this 9th day of August, 1983.