**MEN OF MEASURE CLOTHING, INC.,**
**Plaintiff-Counter-Defendant-Appellant,**

**v.**

**MEN OF MEASURE, INC.,**
**Defendant-Counter-Plaintiff-Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 6, 1985.

Petition to Rehear Jan. 28, 1986.

Application for Permission to Appeal
Denied by Supreme Court
April 21, 1986.

Robert E. Pitts, Pitts & Brittian, Knoxville, for plaintiff-counter-defendant-appellant.

Andrew S. Neely, Luedeka & Neely, P.C., Knoxville, for defendant-counter-plaintiff-appellee.

## OPINION

FRANKS, Judge.

In this declaratory action the chancellor permanently enjoined plaintiff from "any and all use of the name or mark 'Men of Measure' ". Plaintiff has appealed.

We adopt undisputed, pertinent findings of fact from the chancellor's opinion:

Both corporations use the name Men of Measure in their corporation name. Plaintiff is a Tennessee corporation operating two retail clothing stores in Tennessee under the name Men of Measure, one in Knoxville, and one in Johnson City. Defendant is a Missouri corporation, located in St. Louis, operating a wholesale clothing business selling merchandise to retail stores....

Both parties are in the business of selling tall and big men clothing. The evidence shows that the tall and big portion of the men's clothing industry is very specialized, and is relatively small in comparison to the clothing industry as a whole.

Defendant is owned by Ralph Grossberg, who has been in the tall and big men clothing business for many years. He has a number of retail stores in Missouri. In 1979 he incorporated Defendant to sell to the wholesale market, and at that time, after considering the matter, chose Men of Measure for his corporation's name. Primarily Defendant corporation buys surplus tall and big men goods from manufacturers and others (generally at a very reduced price), and then resells the merchandise to retailers in all states, except Vermont and Rhode Island, which apparently have no tall and big men retailers. Defendant's business grew from about $50,000.00 in sales in 1979 to some $3,000,000.00 or $4,000,-000.00 a year currently. Defendant advertises principally by fliers, which describe the merchandise it has to sell, and are sent to upwards of 95% of the big and tall men retailers in the United States. Defendant also regularly attends trade shows, and does most of its selling by telephone. Defendant uses the name Men of Measure in its company name, but not by label on any merchandise it sells.

In August 1983, Plaintiff corporation, whose president is Henry Barker, began operating a retail tall and big men clothing store in Knoxville, and a short time later opened another one in Johnson City. Both stores as well as Plaintiff corporation carry the name Men of Measure, and some of Plaintiff's merchandise, including socks and shirts, is labeled Men of Measure.

The chancellor determined defendant had established first use of the mark and plaintiff's "use of the name in a market place in which both [parties] participate or are likely to participate may well lead to confusion." He also found actual evidence of confusion in the fact that two orders intended to reach defendant in St. Louis mistakenly reached plaintiff in Knoxville.[1] The chancellor stressed the likelihood that both parties would continue to expand their operations, thus creating additional confusion. He concluded the lack of direct competition between the parties did not bar a grant of injunctive relief to defendant.

The principal issue on appeal is whether plaintiff has infringed any rights held by defendant in the trade-mark or trade name "Men of Measure".

■■ Defendant has not registered the "Men of Measure" mark under either the Lanham Act or any pertinent statute. However, it is generally recognized a trade-mark does not necessarily derive its existence from registration under state or federal statutes; nor does its validity depend upon novelty, invention or discovery. Rather, trade-mark rights stem from prior appropriation and use in trade. *Blue Bell, Inc. v. Farah Mfg. Co., Inc.,* 508 F.2d 1260 (5th Cir.1975); *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.,* 339 F.Supp. 973 (M.D.Tenn.1971); *aff'd.,* 470 F.2d 975 (6th Cir.1971). As the court in *Blue Bell* noted, exclusive rights in a trade-mark vest in "one who first uses it in connection with specified goods. [Citations omitted.] Such use need not have gained wide public recognition, [citations omitted] and even a single use in trade may sustain trade mark rights if followed by continuous commercial utilization." *Blue Bell,* 508 F.2d at 1265. Moreover, a first user's rights are

---

1. The reverse in fact occurred.

not restricted by a subsequent user's registration of the name. 87 C.J.S., *Trade-Marks, Trade-Names, and Unfair Competition*, § 30 (1954). Similar rules obtain for the acquisition of rights in trade names. *Id.*

The chancellor determined defendant had used its mark in commerce in this state by soliciting and engaging in business with Tennessee retail firms and he concluded defendant had acquired common law rights in its name. The evidence does not preponderate against the trial judge's findings of fact. T.R.A.P., Rule 13(d).

T.C.A., § 47–25–501 defines "trademark" as "any word, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others." "Trade name" is defined as "a word, name, symbol, or device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others." T.C.A., § 47–25–501(g). It has been observed: "[a] 'trademark' identifies and distinguishes a product, a 'service mark' a service, and a 'trade name' a business; use of a word may fall within more than one category, and as a practical matter, distinctions between use in one category and use in another may be difficult to make." *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1163 (11th Cir. 1982).

■ We believe defendant's use of "Men of Measure" is more properly described as a trade name. A trade name is entitled to the same protection as a trade-mark and is governed by much the same legal precepts: "Any rights that may accrue in a trade name is by reason of the fact that such trade name becomes in law a trademark." *Southwestern Bell Tel. Co. v. Nationwide Indep. Directory Serv., Inc.*, 371 F.Supp. 900, 906 (W.D.Ark.1974); 87 C.J.S., *Trade-Marks, Trade-Names, and Unfair Competition*, § 45.

Plaintiff strenuously insists that which party is entitled to the use of the mark in Upper East Tennessee is properly determined by the issue of which party acquired secondary meaning in Upper East Tennessee.

■ Trade-marks and trade names are classified in ascending order of the legal protection afforded them as generic, descriptive, suggestive, or arbitrary and fanciful. *Abercrombie and Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2nd Cir.1976); *Truckstops Corp. of America v. C-Poultry Co. Ltd.*, 596 F.Supp. 1094, 1096 (M.D.Tenn.1983); *Stix Products, Inc. v. United Merchants and Mfr's., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). A generic term is not entitled to trade-mark protection. *WLWC Centers, Inc. v. Winners Corp.*, 563 F.Supp. 717, 719 (M.D.Tenn. 1983). A descriptive term "is valid and registerable upon a showing of 'secondary meaning,' that is, a showing that the public identifies the trademark with a particular 'source' rather than the product." *Id.* Suggestive terms are those which require "imagination, thought and perception to reach a conclusion as to the nature of goods." *Truckstops*, 596 F.Supp., at 1097; *also see* 87 C.J.S., *Trade-Marks, Etc.*, § 36. Suggestive terms require no showing of secondary meaning, *WLWC Centers*, 563 F.Supp., at 719; nor do "arbitrary and fanciful" marks, which by their nature "bear no relationship to the product or services." *Id.* Trade names are considered "fanciful" "when they do not, by their usual and ordinary meaning, denote or describe products to which they are applied, but indicate their purpose by application and association." *Black's Law Dictionary* (4th ed.), p. 733.

■ In the instant case, "Men of Measure" is properly characterized as an arbitrary or fanciful mark; and, therefore, a strong trade name. Applying the foregoing to the phrase "Men of Measure", it cannot be said that its "usual and ordinary meaning" denotes or even connotes clothing for portly or tall males. If used directly in conjunction with the word "clothing", the phrase could be deemed suggestive.

Used alone, the phrase, however, is subject to myriad interpretations and would not necessarily be suggestive of big and tall men's clothing.

Plaintiff contends, however, that our holding in *Century Homes v. Associated Sunbelt Realtors*, 621 S.W.2d 756 (Tenn. App.1981), requires defendant to establish secondary meaning in its name in order to secure trade name rights in Tennessee. The case is readily distinguishable upon the ground that "Men of Measure" is a strong, arbitrary and fanciful trade name requiring no proof of secondary meaning; whereas, the word "Century" is a "weak" mark[2] entitled to protection only upon a showing of secondary meaning. *Jewel Companies, Inc. v. Westhall Co.*, 413 F.Supp. 994, 1000 (N.D.Ohio 1976). Since the mark under consideration is not a descriptive term or readily describable as a "weak" mark, the phrase requires no proof of secondary meaning.

■ The issue thus becomes whether plaintiff has infringed on defendant's rights to the trade name. The ultimate test of infringement is whether the subsequent user's use of the same or similar mark would create a likelihood of confusion among consumers. *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126 (2nd Cir.1979); *Versar, Inc. v. Vertac Chemical Corp.*, 573 F.Supp. 844, 847 (W.D.Tenn. 1983); *WSM, Inc. v. Bailey*, 297 F.Supp. 870, 872 (M.D.Tenn.1969); *see also M.M. Newcomer Co. v. Newcomer's New Store*, 142 Tenn. 108, 120, 217 S.W. 822 (1919).

■ Various factors are utilized in determining the "likelihood of confusion" among consumers. Among these factors are strength of the mark, relatedness of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, likely degree of purchaser care, a party's intent in selecting the mark and likelihood of expansion of the product's lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642 (6th Cir.1982).

Any doubt as to the likelihood of confusion is resolved against the newcomer. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565 (Fed.Cir.1983).

■ In the instant case, defendant's name is strong and the goods involved are of the same character. Both parties deal in clothing items aimed at the "big and tall men's" market and the names are the same. While there is no direct competition between the parties in the same market, "the lack of competitiveness is not always dispositive of the question of confusion and hence infringement." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482 (5th Cir.1971). As the court noted in *World Carpets*, this is particularly true

> when the sponsor or maker of one business or product might naturally be assumed to be the maker or sponsor of another business or product. The confusion in such cases is confusion of the business; the deceived customer buys the infringer's product in the belief that it originates with the trademark owner or that it in some way is affiliated with the owner. *Id.*, at 488.

For this reason, the court continued, "an action will lie if the mere fact that a second user's presence as a retailer adversely affects the first user's competitive ability as a wholesaler." *Id. See also Railroad Salvage of Connecticut, Inc. v. Railroad Salvage, Inc.*, 561 F.Supp. 1014, 219 U.S.P.Q. 167 (D.R.I.1983).

The chancellor stressed the likelihood that both parties would participate in the same market due to their probable expansions. It has been recognized that among the legitimate interests which a senior user of the name is entitled to protect is the potential "desire to expand his business into the related field in which the junior user is operating and that he ... should be able to develop his business free from the stain and tarnishment which may result from improper trade practices of the junior user." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44 (2nd Cir.1978);

---

**2.** A name which has been adopted by numerous persons on a wide range of products and "consequently is of but limited distinctiveness." 74 Am.Jur.2d, *Trademarks and Tradenames*, § 126.

*cert. den.*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

As to the plaintiff's intent in selecting the mark, the chancellor concluded the plaintiff corporation "from the time of its organization is chargeable with the notice of defendant's existence, its use of the name Men of Measure and that it sold tall and big men clothing at wholesale." The evidence preponderates to this finding by the chancellor. T.R.A.P., Rule 13(d). This is yet another circumstance buttressing the chancellor's determination. It is generally held that a subsequent user's adoption of a name which it knows to have been preempted by a prior user is a factor to be considered. *See e.g., Tigrett Industries, Inc. v. Top Value Enterprises, Inc.,* 217 F.Supp. 313, 317 (W.D.Tenn.1963); *M.M. Newcomer, supra.* "[A]ll of the confusion which has resulted to both complainant and the defendant could have been easily avoided by the defendant adopting a corporate name without the association of the name 'Newcomer' therewith." 142 Tenn., at 115, 217 S.W. 822.

■ Finally, defendant argues the infringement in this case was intentional and defendant is entitled to attorney's fees. Attorney's fees are awarded in "exceptional cases", *i.e.,* those in which the acts of infringement are malicious or fraudulent. *See* 15 U.S.C., § 1117 (1984); *Schwinn Bicycle Co., supra.* The chancellor refused to award fees upon his finding that the choice of name by plaintiff was neither malicious nor done with a fraudulent intent. While plaintiff chose "Men of Measure" with knowledge of defendant's prior use of the name, it was perhaps under a belief that defendant did not, or was not entitled to, use the name in the East Tennessee trade area. Accordingly, the evidence does not preponderate against the chancellor's exercise of discretion in refusing to award fees.

We affirm the judgment of the chancery court and remand at appellant's cost.

SANDERS and GODDARD, JJ., concur.

## OPINION ON PETITION TO REHEAR

Appellant's petition asserts the court erred in following federal case authority decided under the Lanham Act and suggests federal and Tennessee case law differ in that the latter presumably predicates infringement of state tradename rights on demonstrated public consumer confusion. Neither *Century Homes* nor other Tennessee decisions support this conclusion. *Century Homes* essentially states what both federal authority and general principles of trade-mark law hold, *viz.,* that the central test for trade-mark or trade name infringement is "likelihood of confusion". As the chancellor in that case noted in his memorandum opinion, which the court largely adopted, "confusion developed substantially when Century 21 began using that name in this area. And ... there is a fair likelihood that prospects will be diverted from plaintiff to people using Century 21." 621 S.W.2d 758. *M.M. Newcomer* essentially follows the "likelihood of confusion" analysis:

> [I]t is not necessary to prove that the public has actually been deceived by the similarity in names. It is the liability to deception and consequent injury which justifies the issuance of an injunction. If the court can see that confusion and deception is liable to result from the similarity of names it will not refuse injunctive relief because the damage has not already been done. 142 Tenn., at 120, 217 S.W. 822.

*Accord: Kay Jewelry Co. of Chattanooga v. Morris,* 26 Tenn.App. 285, 171 S.W.2d 410 (1942).

There is nothing to suggest a divergence among federal law, Tennessee common law or general principles of trade-mark law with respect to the issues in the instant case; moreover, the Lanham Act has usually been interpreted as an embodiment of the common law. The legislative history of the Act indicates congressional intent to fashion a new federal remedy "against the particular kind of unfair competition that the common law had effectively protected." *Federal-Mogul-Bower Bearings, Inc. v.*

*Azoff,* 313 F.2d 405 (6th Cir.1963). Registration under the Act has been held to confer jurisdiction on federal courts but not create rights or enlarge any pre-existing rights of the owner of the mark. *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.,* 339 F.Supp. 973 (M.D.Tenn.1971); *aff'd.,* 470 F.2d 975 (6th Cir.1971).

Appellant further argues that it was error to apply principles of trade-mark law; however, for all practical purposes, the legal principles governing trade-marks and trade names are virtually identical. 87 C.J.S., *Trade-marks, Trade-names, and Unfair Competition,* § 8 (1954).

Finally, appellant insists that our analysis of the name was based on a doctrine specifically rejected in the *Century Homes* decision. That case does not support appellant's contentions. The chancellor's opinion in *Century Homes,* as quoted by this court, states: "[i]n order for plaintiff to have any rights *in such a name* the evidence must establish that it has developed what is called a secondary meaning." 621 S.W.2d at 758. [Emphasis supplied.] This language requires courts to construe the phrase "such a name". The name "Century" is clearly a weak trade name entitled to protection only on a showing of secondary meaning. Under appellant's contention, all trade names would require proof of secondary meaning in order to receive legal protection. This is not a rule of trade-mark law. *See AMP Inc. v. Foy,* 540 F.2d 1181 (4th Cir.1975); *DCA Food Industries, Inc. v. Hawthorn Mellody, Inc.,* 470 F.Supp. 574 (S.D.N.Y.1979).

The petition for rehearing is respectfully denied.