(170 App. Div. 416)

GERMAN–AMERICAN BUTTON CO. v. A. HEYMSFELD, Inc., et al.

(Supreme Court, Appellate Division, First Department.   December 10, 1915.)

1. TRADE-MARKS AND TRADE-NAMES &#8660;73—INFRINGEMENT—NAMES.
  The principle of General Corporation Law (Consol. Laws, c. 23) § 6, providing that no certificate of incorporation for an organization having the same name as a corporation authorized under the laws of the state, or a name so nearly resembling it as to be calculated to deceive, shall be filed, applies also to individuals or copartnerships, and they will not be permitted to adopt a trade-name essentially similar to that of a corporation in existence and calculated to deceive.

  [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. &#8660;73.]

2. TRADE-MARKS AND TRADE-NAMES &#8660;67—NAMES THE SUBJECT OF OWNERSHIP—ARBITRARY NAMES—GEOGRAPHICAL DESCRIPTIONS.
  That a trade-name adopted by a corporation is arbitrary and composed of geographical description does not alter its right to have that name protected from unlawful infringement.

  [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 78; Dec. Dig. &#8660;67.]

3. TRADE-MARKS AND TRADE-NAMES &#8660;70—INFRINGEMENT—NAMES OF MANUFACTURERS.
  The name "German-American Hand Crochet Button Works," adopted by an individual and assigned to a corporation, was so calculated to de-

ceive in simulating the name "The German-American Button Company," previously adopted and for a long time used by a corporation, that its use was subject to be enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ☞70.]

4. TRADE-MARKS AND TRADE-NAMES ☞69—INFRINGEMENT—WHAT UNLAWFUL —INTENT.

The right of plaintiff to enjoin the use of a trade-name so essentially similar to his own as to be calculated to deceive does not depend upon the intent with which that name is used by the defendant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 80; Dec. Dig. ☞69.]

5. TRADE-MARKS AND TRADE-NAMES ☞75—UNLAWFUL COMPETITION—DECEPTION OF PUBLIC.

To enjoin the unlawful use of a trade-name essentially similar to one already in use, it is not necessary to allege or prove that the public has actually been deceived by the similarity, since the liability to deception is the criterion, and that confusion has already resulted is merely evidence of the liability.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. ☞75.]

6. TRADE-MARKS AND TRADE-NAMES ☞68—UNLAWFUL COMPETITION—SIMILARITY OF PRODUCTS.

Where a manufacturer sought to adopt a trade-name essentially similar to that of a corporation already in existence, and the product of the new firm was a button differing from that of the old firm only in that it was hand-made instead of machine-made, although the old firm also made other kinds of buttons, the similarity of products was so calculated to deceive that the use of the trade-name by the new firm was subject to be enjoined, especially where it was within its corporate powers to make all kinds of buttons.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. ☞68.]

7. JUDGMENT ☞203—MORE THAN ONE JUDGMENT—SEVERANCE.

Where, without a severance of the action, two decisions are granted and two judgments rendered thereon, the court's action is irregular, for without a severance there can be but one final judgment in an action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 361, 984; Dec. Dig. ☞203.]

Appeal from Special Term, New York County.

Action by the German-American Button Company against A. Heymsfeld, Incorporated, and others. From a judgment dismissing the complaint, after trial to the court, plaintiff appeals. Reversed, and judgment ordered for plaintiff.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

Saul S. Myers, of, New York City, for appellant.

Herman Weiss, of New York City, for respondents A. Heymsfeld, Inc., and Nicholas A. Heymsfeld.

Nicholas A. Heymsfeld, of New York City, for respondent Hedwig Heymsfeld.

SCOTT, J. This action is for an injunction to restrain the defendants from using the trade-name of "German-American Hand Crochet

Button Works," upon the ground that such use constitutes unfair competition. Plaintiff, the German-American Button Company, is a domestic corporation having its principal place of business at Rochester, in this state, and also maintaining offices and salesrooms in the city of New York. It employs a number of salesmen and carries on an extensive business, both in the United States and Canada. It began business under its present name in the year 1893, and has continued to do business under that name ever since. Originally plaintiff manufactured but few types of buttons, but by degrees its output has expanded, so that it now manufactures and sells ivory, celluloid, bone, glass, and pearl buttons, as well as buttons covered with knitted silk or other material. It appears that plaintiff's product has become known to the trade as "German-American" buttons.

In the year 1912 Nicholas A. Heymsfeld and two others organized the corporation of A. Heymsfeld, Incorporated, with a capital of $1,000, for the purpose of doing a general merchandise business, including specifically the buying, selling, manufacturing, and selling as agent or factor buttons, button material, and raw products for the manufacture of buttons of any kind and all kinds and description. An important, if not the principal, business of this corporation has thus far been selling buttons manufactured by Hedwig Heymsfeld, wife of Adolph Heymsfeld, who on November 1, 1912, filed with the county clerk a certificate that she had adopted the trade-name of "German-American Hand Crochet Button Works." The corporation of A. Heymsfeld, Incorporated, advertises itself as "manufacturers and importers of covered and crochet buttons" and as "sole selling agents for the German-American Hand Crochet Works."

The plaintiff's claim is that by long-continued use it had established a prior and superior right to the use of the name "German-American," as used with reference to the manufacture and sale of buttons, and that the adoption of those words as part of the trade-name of a concern engaged in a like business was calculated to produce confusion and consequent loss to plaintiff.

[1] While it is true that two precisely similar unfair competition cases are seldom to be found, there are certain well-established general principles that are applicable to all. The trade-name used by defendants, and the use of which plaintiff seeks to enjoin, is a purely arbitrary one selected by defendants themselves. If it had been attempted to create a corporation under that name, it is very doubtful if it could have been legally done, for it is provided in the General Corporation Law, § 6, that:

"No certificate of incorporation of a proposed corporation having the same name as a corporation authorized to do business under the laws of this state, or a name so nearly resembling it as to be calculated to deceive, shall be filed or recorded in any office for the purpose of effecting its incorporation, or of authorizing it to do business in this state."

The prohibition thus enacted by statute as to corporations is equally applicable, under general and well-recognized principles, to the adoption of a trade-name by an individual or copartnership. As was said by the Court of Appeals in Chas. S. Higgins Company v. Higgins

Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769:

"It is well settled that an exclusive right may be acquired in the name in which the business has been carried on, whether the name of a partnership or of an individual, and it will be protected against infringement by another, who assumes it for the purposes of deception, or even when innocently used without right to the detriment of another. * * * In respect to corporate names, the same rule applies as to the names of firms or individuals, and an injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation which tends to create confusion and enable the later corporation to obtain, by reason of the similarity of names, the business of the prior one."

And in Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 32 Fed. 94 it was said:

"The defendant's name was of its own choosing, and, if an unlawful imitation of the complainant's, is subject to the same rules of law as if it were the name of an unincorporated firm or company. It is not identical with the complainant's name. That would be too gross an invasion of the complainant's right. Similarity, not identity, is the usual recourse, when one party seeks to benefit himself by the good name of another. * * * We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law."

[2] The fact that the distinctive and similar features of both plaintiff's and defendant's names consist of a combination of geographical names does not deprive the plaintiff of the right to protection. This feature was present in Kayser v. Italian Silk Underwear Co., 160 App. Div. 607, 146 N. Y. Supp. 22, and in Fuller v. Huff, 104 Fed. 141, 43 C. C. A. 453, 51 L. R. A. 332. In the latter case the United States Circuit Court of Appeals for this circuit said:

"The subject of the unlawful use by competitors of the name under which a rival has previously presented himself to the public and has gained a business reputation, although the name is not strictly a trade-mark, and is either geographical or descriptive of quality, has been frequently of late before the courts, which have demanded a high order of commercial integrity, and have frowned upon all filching attempts to obtain the reputation of another."

So, also, it was said in British-American Tobacco Co. v. British-American Cigar Co., 211 Fed. 933–935, 128 C. C. A. 431, 433 (Ann. Cas. 1915B, 363):

"The words 'British-American' may be geographical or political, but in this controversy they have acquired a meaning; they have been irrevocably associated with a large tobacco corporation for a decade, and any other tobacco company with the same name is sure to be associated in the public mind with the elder company, and is sure to reap such benefits as accrue from such association. If there were any valid reason for adopting the name, or if the business were other than tobacco, there might be some reason for the defendant's action; but no honest reason can be suggested for appropriating the name of the old and long-established company. In the absence of any plausible explanation, we have a right to assume that the reason was to secure the advantages which would result from a supposed connection with the well-known company."

[3] We think that there can be no doubt that the similarity of the name arbitrarily selected by defendants to that long used by plaintiffs is calculated to produce confusion in the trade, and to make it possible,

at least, that defendants' goods may be sold to persons who believe that they are buying goods from plaintiff.

[4] It seems probable that defendants' name was intentionally adopted with this end in view, but plaintiff's right to an injunction does not depend upon the intent with which defendants' name was adopted. It was so held in Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904, in which the court said:

> "The trial court has not found, and the proof does not indicate, any intention on the part of the defendants to infringe upon the plaintiff's trade-mark. * * * On the contrary, their conduct has been such since the commencement of the action as to acquit them of the charge of any wrongful or fraudulent intent. But this question does not arise where nothing but preventive relief is granted. It might be material if damages were sought or claimed."

To the same effect are Grocer's Pub. Co. v. Grocer's Pub. Co., 25 Hun, 398, 402; Chas. S. Higgins Co. v. Higgins Soap Co., supra, 144 N. Y. at page 471, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Holmes v. Holmes, 37 Conn. 278, 9 Am. Rep. 324; American Clay Co. v. American Co., 198 Pa. 189, 47 Atl. 936; Fairbanks v. Luckel, 102 Fed. 327, 42 C. C. A. 376.

[5] Nor is it an answer to plaintiff's demand that it has failed to show that any person has as yet been deceived by the similarity of names. It is the liability to deception and consequent injury which justifies the issuance of an injunction in a case like the present, and if the court can see that confusion and deception is liable to result from the similarity of, names, it will not refuse injunctive relief because the damage has not already been done. Proof that confusion has already resulted is merely evidence of the liability to deception. T. A. Vulcan v. Myers, supra; Society of 1812 v. Society of 1812 in the State of New York, 46 App. Div. 568–573, 62 N. Y. Supp. 355; Church v. Russ (C. C.) 99 Fed. 276–279.

[6] Of course the probability of confusion and consequent damage will exist only when plaintiff and defendant are dealing in the same or substantially similar products, and it was upon the ground of dissimilarity of product that the injunction was denied at Special Term; the learned justice relying upon Corning Glass Works v. Corning Cut Glass Co., 197 N. Y. 173, 90 N. E. 449. That case, as we read it, differs widely on the facts from the present. The reason why an injunction was refused in that case was because "between the two concerns there has been no competition, nor rivalry, because each produces a distinct class of ware"; that is to say, the plaintiff produced exclusively uncut glass, while defendant produced exclusively cut glass. Between two such essentially dissimilar products there obviously was not likely to arise any confusion. In the principal case the defendants at present produce and deal in a button covered by hand crochet work. The plaintiff produces and deals in a button covered by machinery with knitting or crochetting. Both seem to be known in the trade as "crochet buttons," although other trade-names are sometimes used to designate the buttons made by plaintiff. Both kinds of buttons are apparently adapted to the like uses, and are so alike in appearance as to be distinguished with difficulty by others than trained experts.

We think it impossible to say upon the evidence that these products of the respective parties are so dissimilar that no confusion is likely to result from the similarity of name against which plaintiff seeks protection. It is true that plaintiff makes many other kinds of buttons with which defendants' present output does not compete; but there can be no assurance that defendants, if confirmed in the use of the present trade-name, will not so expand the business as to compete with plaintiff in every line. Indeed the certificate of incorporation of defendant A. Heymsfeld, Incorporated, expressly provides for such expansion. This of itself is a consideration weighing in plaintiff's favor. Collins v. Oliver (C. C.) 18 Fed. 561–570; Edison Storage Battery Co. v. Edison Automobile Co., 67 N. J. Eq. 44–53, 56 Atl. 861. If defendants are sincere in their protestations that they seek no adventitious advantage from the use of a name so closely resembling plaintiff's, they should have no difficulty in adopting one which will obviate any probability of confusion.

We are of opinion, on the whole case, that plaintiff has shown defendants to be guilty of unfair trade in the adoption of the trade-name chosen by Mrs. Heymsfeld and used by the corporation of A. Heymsfeld, Incorporated, and that an injunction should issue against the use of the name "German-American Hand Crochet Button Works."

[7] We observe that, although there has been no severance of the action, the court has made two decisions, not identical, and has entered two judgments. This is irregular, since without a severance there can be but one final judgment in an action.

The judgments appealed from are therefore reversed, with costs, and a judgment ordered in favor of plaintiff for the injunctive relief demanded in the complaint, with costs. The findings of fact included in the decisions of the Special Term are reversed, and the findings of fact submitted by plaintiff will be found. If other findings are desired, they may be submitted upon the settlement of the order to be entered herein.

Settle order on notice. All concur.