[Cite as *McMahon v. Cooke*, 2024-Ohio-2170.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CARL G. MCMAHON, | : | |
| Defendant, | : | |
| v. | : | No. 113190 |
| ANDREA M. COOKE, ET AL., | : | |
| Plaintiffs-Appellees, | : | |
| [Appeal by ABKCO Music, Inc., | : | |
| Defendant-Appellant.] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART
**RELEASED AND JOURNALIZED:** June 6, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2015ADV211062

*Appearances:*

Reminger Co., L.P.A., Clifford C. Masch, and Adam M.
Fried, *for appellant*.

Thompson Hine LLP, Thomas L. Feher, John C. Allerding,
and Ashley M. Bailes, *for appellee*.

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant ABKCO Music, Inc. ("ABKCO") brings the instant appeal from the probate court's judgment on February 9, 2023, awarding appellee Andrea M. Cooke[1] ("Cooke") attorney fees and costs. After a thorough review of the record and law, this court affirms in part and vacates in part.

## I. Factual and Procedural History

{¶ 2} On October 9, 2015, "Carl G. McMahon, Trustee of the Andrea Marless Cooke Family Trust u/a/d 6/24/2009," ("McMahon") filed a complaint against Cooke and her minor children: S.C. (d.o.b. 8/9/2003), Al.C. (d.o.b. 3/29/2007), M.C. (d.o.b. 6/15/2012), and "Jane/John Doe Cooke, the unknown and unborn children of Andrea M. Cooke and the issue of such children." The complaint alleged that Cooke was the settlor and the children were the sole beneficiaries of the Andrea Marless Cooke Family Trust ("the Trust"). While ABKCO was not joined as a defendant until later, the substantial history of the litigation necessitates a thorough recitation of the facts.

### History and Events Preceding McMahon's Complaint

{¶ 3} Cooke is the granddaughter of legendary musician Sam Cooke, who was murdered on December 11, 1964, at 31 years old. Cooke's mother, Denise Arnett Cooke, also referred to within the record as Denise Somerville Cooke ("Denise"), was

---

[1] Cooke has commenced her own appeal that we have assigned as a companion to the instant appeal. *McMahon v. Cooke*, 8th Dist. Cuyahoga No. 113186.

one of Sam Cooke's daughters. Denise passed away in May 2000, and Cooke, as her only child, was the sole beneficiary of the estate.

{¶ 4} In 1986, Denise contracted with ABKCO, releasing her (and her "successors and assigns") rights to Sam Cooke's music to ABKCO in exchange for periodic royalty checks ("the Royalty Agreement"). Until her death, Denise regularly received royalties from ABKCO. While Denise's estate was being wound up, Cooke's attorney, McMahon, notified ABKCO that Denise had passed and requested that all future royalty payments be paid to Cooke. When Denise's estate was closed in 2009, Cooke, under McMahon's counsel, organized the Trust to receive the royalty payments and appointed McMahon as trustee. A contract dated April 13, 2010, assigned Denise's estate interest in the Royalty Agreement to the Trust. From this point forward, all royalties were deposited into the Trust and McMahon distributed them to Andrea as requested.

{¶ 5} On August 28, 2015, Cooke filed a complaint in the probate court against McMahon and the alternate trustee provided for in the trust instrument, Joseph Silvaggio ("Silvaggio"), and was assigned Cuyahoga P.C. No. 2015ADV209988. The complaint alleged that McMahon and Silvaggio had breached their fiduciary duties to Cooke and demanded an accounting, alleging that her prior attempts to audit the financial activity of the Trust had been stonewalled by McMahon and Silvaggio. McMahon filed a pre-answer motion to dismiss, alleging that Cooke did not have standing to bring the complaint because she was not a beneficiary of the trust, only the settlor of the trust.

## McMahon's Complaint

**{¶ 6}** In September 2015, while McMahon's motion to dismiss was pending in Cuyahoga P.C. No. 2015ADV209988, McMahon filed a separate complaint in the probate court, from which this appeal stems, seeking (1) declaratory judgment determining whether Cooke is a beneficiary of the Trust, (2) approval of McMahon's accounting with respect to the Trust, and (3) approval for McMahon to resign as trustee.

**{¶ 7}** The complaint requested that the court clarify the rights and relationships under the Trust instrument. McMahon alleged that Cooke's legal custody of the children had been terminated in September 2015, and that the children had been placed in the custody of the Cuyahoga County Division of Child and Family Services ("CCDCFS"). Pursuant to Paragraph 3(a)[2] of the Trust, only beneficiaries to the trust were "the persons with withdrawal rights." The complaint alleged that since Cooke was not a beneficiary, she did not possess withdrawal rights under the trust instrument, and since she lost custody of her children, was no longer permitted to receive distributions from the Trust for their benefit.

---

[2] 3(a) provides, in its entirety:

The class of beneficiaries who are entitled to exercise the withdrawal rights provided in this paragraph 3 consists of all of my issue (including the issue of a child of mine) who are living at the time that a contribution is made to the trust. The withdrawal right of such person in that class shall be as specified by the person making the transfer. If there is no direction by such person as to the withdrawal rights of each member of the class, then the withdrawal rights of each class member shall be determined as follows: equally among each of my children, the then living issue of a child of mine who is then deceased to have the right of withdrawal, per stirpes, among them of that deceased child's share.

{¶ 8} Prior to losing custody of her children, Cooke had been receiving distributions from the Trust. After Cooke's legal custody of the children was terminated, Cooke continued to demand distributions from McMahon, insisting that she was a beneficiary of the Trust, and McMahon obliged. Attached as exhibits to the complaint were copies of numerous checks written from the Trust to Cooke displaying memos such as "Andrea's annual payments," "automobile insurance," "automobile repairs," "criminal attorney fees," "automobile purchase," and "rehab allowance." McMahon argued that pursuant to Paragraph 6(o)[3] of the Trust, Cooke was no longer eligible to receive distributions on the children's behalf since her legal custody had been terminated.

{¶ 9} Shortly after McMahon filed the complaint, the probate court issued a temporary restraining order, ordering McMahon to continue making distributions to Cooke from the Trust in the amount of $250 weekly, as well as her rent and utilities to maintain the status quo during the pendency of the litigation.

---

[3] 6(o) provides, in its entirety:

To make payments or distributions to an incapacitated or incompetent beneficiary, either directly to such one or to a parent, spouse, or guardian of such one or to any person or organization having charge of or the responsibility for the care of such beneficiary, to be applied for the sole use and benefit of such one. In making any distribution hereunder to a minor beneficiary, the Trustee may make such distribution to any person, bank, or trust company as custodian for such one under the Ohio Transfers to Minors Act. In making any such payment or distribution, the receipt of such recipient shall be a full release to the Trustee and the Trustee shall have no duty to see to the application of any such payment or distribution.

**The Children's Answer, Counterclaim, and Cross-claim**

{¶ 10} The children answered, counterclaimed, and cross-claimed through John P. Koscianski, the children's guardian ad litem ("GAL"). The counterclaim alleged that McMahon had breached his duties as trustee by making distributions to Cooke, who was not a beneficiary of the Trust, and alleged that McMahon paid himself "excessive fees" in violation of Section 7 of the Trust. The cross-claim asked the probate court to hold McMahon and Cooke personally liable for any liabilities incurred on behalf of the Trust.

**McMahon's First Amended Complaint**

{¶ 11} On November 20, 2015, McMahon filed his first amended complaint, removing Jane/John Doe Cooke and adding An.C. (d.o.b. "1/2014") and CCDCFS as defendants.

**Cooke's Answer, Counterclaim, and Cross-claim**

{¶ 12} Cooke filed an answer, counterclaim, and cross-claim on December 21, 2015, incorporating all factual allegations from 2015ADV209988. Cooke alleged that at the time she organized the Trust, she was unemployed, had not obtained a high school diploma, and thus believed that the royalties would be her main source of income for the duration of her life. Cooke alleged that at the time she organized the trust, she intended to be a beneficiary of the trust and for her children to be secondary beneficiaries.

{¶ 13} The counterclaim alleged that at the time Denise's estate had closed, Cooke had full rights to the royalties. She alleged that the contract assigning her

rights to the royalties to the Trust was signed by McMahon without her authorization. Cooke's final allegation was that McMahon had been making distributions to her when asked and had never informed her that she was not a beneficiary under the Trust.

{¶ 14} Cooke requested dismissal of McMahon's first amended complaint and a reformation of the terms of the Trust to reflect her true intentions. In the alternative, Cooke requested a declaratory judgment declaring that she is entitled to the royalties and that all assets in the Trust to be turned over to her. In the alternative, Cooke requested a judgment declaring that the Trust is void; a judgment for compensatory damages against McMahon and indemnification should Cooke be found liable to a third-party because of her personal use of funds from the Trust; an order that McMahon provide a full accounting of the Trust since its inception through the date of the order; and costs and fees.

**ABKCO's Involvement/The ABKCO Parties**

{¶ 15} ABKCO Music and Records, Inc. ("AMR") first became involved when Cooke subpoenaed AMR directly because Cooke was convinced that McMahon was not properly maintaining records relating to the royalties and desired to obtain the records directly from AMR. Though the issue is not germane at this point in the litigation, ABKCO and AMR are two separate and distinct entities.

{¶ 16} On August 19, 2016, ABKCO (not AMR), sent McMahon a letter pertinently advising that

[a]s a result of the pending proceeding, entitled *Carl G. McMahon v. Andrea M. Cooke, et al.* (the "Proceeding"), which involves competing claims as to the right to receive the songwriter royalty from [ABKCO], [ABKCO] will hold all such royalties until such time that there is an adjudication as to the proper recipient of such royalties.

{¶ 17} The letter also pertinently provided:

As a result of the dispute between [Cooke] and the Trust[,] ABKCO, who has no interest in the outcome in the resolution of the dispute has incurred substantial attorney's fees and costs. Consequently, [ABKCO] reserves any and all rights and remedies it may have in respect of such attorneys fees and costs including [ABKCO]'s right to charge all such fees and costs against future royalties payable to the Trust or such other individual or entity as a court may hereafter determine.

{¶ 18} Upon receipt of this letter, McMahon filed a motion asking the probate court to revisit Cooke's $250 per week allowance. Because ABKCO elected to withhold royalty payments and reserved the right to recover fees from the withheld royalties, McMahon desired to preserve the approximate $35,000 in the Trust for such purposes, as well as his trustee fees. The children's GAL agreed that the allowance should be terminated.

**AMR and ABKCO Become Parties**

{¶ 19} On October 26, 2016, Cooke filed a motion requesting a temporary and preliminary injunction, barring AMR from withholding the royalty payments. The motion alleged that "[AMR]'s decision to cease paying [r]oyalties is a culmination of a year-long dispute between the company and [Cooke] regarding access to [AMR] records that are critical to this action. [AMR's] real intention in refusing to continue making payments is to subject [Cooke] to economic duress with the intent of discouraging her from asserting her legal rights."

{¶ 20} In a separate motion, Cooke sought leave to join AMR as a party to the case and amend the complaint. Both filings specifically and exclusively delineate "AMR" as the relevant party. It is, however, undisputed that the Royalty Agreement provided that ABKCO was the only party to the agreement. Attached to the motion were several letters exchanged between Cooke's counsel and Michael B. Kramer ("Kramer"), AMR's attorney located in New York, exhibiting that AMR, through Kramer, had been uncooperative in responding to subpoena requests.

{¶ 21} The trial court granted Cooke's motion to join AMR and accepted the amended answer, counterclaim, and cross-claim. The court also granted Cooke's motion for a temporary injunction, enjoining AMR from ceasing to make payments in accordance with the Royalty Agreement to the Trust and set a hearing on Cooke's application for a preliminary injunction. While AMR's involvement was pending, the parties to the case were embroiled in numerous, voluminous discovery disputes pertaining to document requests and deposition scheduling.

{¶ 22} Once AMR was joined as a cross-claim defendant, it filed a motion to dismiss. The first motion to dismiss argued, for the first time since AMR's involvement, that AMR is not a party to and has no obligations under the Royalty Agreement, which had been signed by ABKCO, not AMR. The motion alleged that "Cooke has sued the wrong party. She sued AMR for breach of contract, declaratory judgment, and accounting under a Royalty Agreement she claimed AMR breached. But AMR was not a party to the Royalty Agreement." Cooke opposed the motion to dismiss, arguing that when Kramer initially responded to the subpoena requests

more than a year ago, he "responded and suggested that AMR was the proper party from whom Ms. Cooke should be seeking such information/documents."[4]  Cooke further alleged that AMR is the parent company of ABKCO, so AMR would have an interest in the litigation despite not being a party to the Royalty Agreement.  Cooke filed a motion for leave to amend her answer again, this time desiring to add ABKCO to the cross-claim and add claims against both ABKCO and AMR for the allegedly improper actions of both entities.  The court granted leave and allowed the amendments.

{¶ 23} In January 2017, ABKCO filed a complaint in the New York County Supreme Court against McMahon and Cooke setting forth causes of action for 1) breach of contract, and 2) attorney fees, both related to the question of whether ABKCO had a right to set off the withheld royalty payments based on costs and fees incurred in producing documents in furtherance of Cooke and McMahon's dispute. *ABKCO Music, Inc. v. McMahon*, 57 Misc.3d 1223(A), 2017 NY Slip Op 51653(U), 72 N.Y.S.3d 516 (Sup.Ct.).

---

4 Despite this allegation, the record demonstrates the contrary. Exhibit B to this filing is a letter from Kramer, dated October 28, 2015, that advises:

Let me begin by stating that AMR, has no contractual obligations to your client whatsoever, and takes no position one way or the other with respect to the Litigation. AMR shall comply with any appropriate order of the court regarding to whom future accountings and payments should be made.  However, as you are certainly aware AMR is not subject to the jurisdiction of an Ohio probate court or its subpoena power and any attempt by you to bring AMR into the Litigation would constitute an abuse of process subjecting your firm to appropriate proceedings, both civil and disciplinary.

{¶ 24} Shortly thereafter, ABKCO filed a pre-answer motion to dismiss the second amended cross-claim, arguing that a New York court had first obtained jurisdiction over the proper parties to the exclusion of the probate court.

**Resolution of Trust-Related Claims**

{¶ 25} On March 2, 2017, McMahon filed a motion advising that all parties except for ABKCO and AMR had reached an agreement that included reformation of the Trust and a negotiated settlement owed to Cooke and the Trust for McMahon's actions. McMahon once again sought permission to resign as trustee.

{¶ 26} While the aforementioned motions were pending, on April 7, 2017, Cooke filed a notice of partial dismissal, dismissing (1) her cross-claims against AMR without prejudice and (2) her cross-claims for misrepresentation/fraud, negligent misrepresentation, conversion, and accounting against ABKCO.

{¶ 27} On December 13, 2017, McMahon, Cooke, the children, and CCDCFS filed a joint stipulation to dismiss all claims with prejudice, providing that "each Party will bear their own fees and costs." The agreement specified that Cooke was "not dismissing her cross-claims against [ABKCO]."

{¶ 28} With these motions and notices pending before it, the trial court set a hearing for January 2018, noting that

> [d]efendant Cooke has entered in an agreement to Reform the Andrea Marless Cooke Family Trust which may or may not affect her standing to maintain her cross[-]claims. The Court further finds that there is a question of fact and law as to whether the New York Court or the Cuyahoga County Probate Court has jurisdiction over the cross[-]claims.

{¶ 29} Following the hearing in January 2018, ABKCO filed a supplemental brief to its pending motion to dismiss, noting that it "became necessary based upon representations by [Cooke's counsel] to this Court at the oral argument." The substance of the brief argued that (1) Cooke did not have standing to bring the breach-of-contract and declaratory-judgment claims, (2) the probate court lacked subject-matter jurisdiction over Cooke's breach-of-contract and declaratory-judgment claims based on the pending New York case, and (3) any purported assignment of rights under the Royalty Agreement required ABKCO's consent in writing prior to the assignment, which had not happened when Cooke's estate interest was assigned to the Trust.

{¶ 30} In April 2018, the court ruled on the motion to dismiss, finding that (1) Cooke had standing to pursue her claims against ABKCO, (2) the court had subject-matter jurisdiction over Cooke's claims because the New York matter involved different allegations, and (3) Cooke complied with all conditions precedent for bringing an action against ABKCO. As such, the court denied ABKCO's motion to dismiss and ABKCO timely filed an answer and counterclaim to Cooke's second amended cross-claim.

**Summary Judgment: Cooke and ABKCO**

{¶ 31} Following a pretrial held on May 15, 2018, another discovery dispute ensued over ABKCO's right to indemnification pursuant to Section 9 of the Royalty Agreement. Despite the fact that the settlement between the other parties made clear that ABKCO was to release the funds to the reformed Trust, ABKCO refused to

release the withheld royalties until it subtracted the indemnification that it was allegedly entitled to, which had not yet been determined. As a result, the trial court ordered ABKCO to provide Cooke/the Trust with "(1) the amount [ABKCO] is holding and (2) the amount [of] fees which [ABKCO] claims a right to offset against the funds it is holding."

{¶ 32} On July 26, 2018, Cooke filed a motion for partial summary judgment as to her breach-of-contract claim against ABKCO, her declaratory-judgment claim against ABKCO, and ABKCO's cross-claim against her. The motion argued that ABKCO was not entitled to indemnification pursuant to the Royalty Agreement and that ABKCO did not have the right to withhold any of the royalties at this point in time.

{¶ 33} ABKCO responded with a Civ.R. 56(F) motion, alleging that factual discovery was incomplete. The court agreed and set a discovery schedule. Several more discovery disputes arose, prompting the probate court to set a hard deadline requiring that all discovery be completed by July 19, 2019. ABKCO was allowed until August 19, 2019, to file its responsive motion to Cooke's motion for summary judgment, and its own motion for summary judgment. Immediately thereafter, ABKCO filed a motion asking for a discovery extension, and significant briefing once again ensued. The trial court denied the motion.

{¶ 34} On August 19, 2019, ABKCO filed its brief in opposition to Cooke's motion for summary judgment and its own motion for summary judgment, urging the probate court to rule in its favor as to Cooke's breach-of-contract and

declaratory-judgment claims. ABKCO argued that it was entitled to summary judgment, raising the argument that Cooke did not fulfill the conditions precedent for a breach-of-contract claim under the Royalty Agreement, which required Cooke to provide notice and allow ABKCO the opportunity to cure the purported breach.

{¶ 35} Around this time, the New York matter was resolved; the Supreme Court of New York, Appellate Division, First Department, found that ABKCO did not present sufficient facts to prove that the New York court had personal jurisdiction over the matter. *ABKCO Music, Inc. v. McMahon*, 175 A.D.3d 1201, 2019 NY Slip Op 06721, 109 N.Y.S.3d 264.

{¶ 36} On November 20, 2019, the trial court denied Cooke's motion for summary judgment on the breach-of-contract and declaratory-judgment claims, finding that summary judgment should be granted in favor of ABKCO as it pertains to Cooke's breach-of-contract and declaratory-judgment claims, and allowed ABKCO to seek indemnification pursuant to Section 9 of the Royalty Agreement.

{¶ 37} Cooke timely appealed to this court, which was dismissed for want of a final, appealable order since the judgment did not determine the amount that ABKCO was entitled to under Section 9 of the Royalty Agreement. *See McMahon v. Cooke*, 8th Dist. Cuyahoga No. 109316 (Motion No. 536315).

**The Attorney Fees Dispute**

{¶ 38} Cooke returned to the probate court and filed a motion asking the court to set a prehearing schedule and hearing dates to resolve the outstanding indemnity dispute, which the court complied with.

{¶ 39} In the respective trial briefs, ABKCO indicated that it was seeking $414,527.25 in indemnification; Cooke argued that based on her calculations, only $14,250 of the amount sought was reasonable. Thereafter, ABKCO amended its indemnification request twice, seeking a final amount of $476,155.75.

{¶ 40} On June 21, July 7, and July 12, 2021, the probate court conducted hearings on the indemnity dispute. On September 9, 2021, the probate court issued a journal entry detailing findings of fact and conclusions of law based on the trial briefs and the hearings.

{¶ 41} Pertinent to this appeal, the judgment entry ordered (1) all fees incurred on behalf of AMR are disallowed, and that since Kramer only represented AMR, all of his fees were disallowed; (2) all billing by Reminger & Co. LPA (ABKCO's counsel) until February 3, 2017, was on AMR's behalf and therefore disallowed; (3) any billed communications between Reminger & Co. LPA and Kramer were disallowed; (4) the New York case filed by ABKCO for breach of contract was not covered by the Royalty Agreement, and any fees stemming therefrom were disallowed; (5) that ABKCO is entitled to $111,182.25, to be taken from the withheld royalties before distribution to the Trust. Notably, the September 9, 2021 entry ordered ABKCO to release all royalties being held, after subtracting the $111,182.25 that it was entitled to under Section 9 of the Royalty Agreement.

{¶ 42} ABKCO attempted to appeal, but the appeal was dismissed for failure to comply with App.R. 3(A). *See McMahon v. Cooke*, 8th Dist. Cuyahoga No. 110896 (Nov. 2, 2021), motion No. 550283.

{¶ 43} About two months after the September 9, 2021 judgment was entered, Cooke filed a motion for order of contempt and sanctions against ABKCO, alleging that ABKCO had not complied with the court's order to subtract the amount that it was entitled to and distribute the remainder of the withheld royalties. ABKCO disputed that Cooke had standing to bring the motion, claiming the royalties are payable to the reformed Trust. Nonetheless, without any decision or order of the court, ABKCO willingly released the withheld royalties on December 8, 2021.

{¶ 44} This dispute caused Cooke's counsel to move for prejudgment interest in the amount of $473,918.37 and postjudgment interest in the amount of $55,857.68, as well as reasonable attorney fees. ABKCO opposed and a hearing was set.

{¶ 45} The hearing commenced on November 29, 2021, and the probate court found ABKCO in contempt, but found that contempt finding was abated because ABKCO voluntarily released the withheld royalties on December 8, 2021. The court also found that ABKCO owed the Trust the requested prejudgment and postjudgment interest for failing to make the royalty payments since 2016 and for delaying the payment of withheld royalties following the court's September 9, 2021 order. The court requested that Cooke submit applications for reasonable attorney fees.

{¶ 46} Cooke's counsel ultimately requested $445,516.81 in legal fees from ABKCO, stemming from the commencement of the matter, even before ABKCO's involvement. ABKCO opposed. On January 23, 2023, the court held a hearing and

determined that Cooke was entitled to attorney fees in the amount of $440,647.50, as well as costs totaling $6,779.31. In so reasoning, the probate court found:

> Indeed, as demonstrated again at the hearing, the entirety of this dispute (and thus all time devoted by [Cooke's counsel]) is a product of [ABKCO] falsely claiming to have incurred fees and improperly ceasing royalty payments in August 2016. *See*, 9.9.21 judgment entry at 84. [ABKCO] mislead this Court early on as to its involvement in this matter, attempted to "race" to the New York Court to deprive this Court of jurisdiction and then ignored this Court's Order to pay the Royalty fees due to the Trust and Ms. Cooke. The actions of [ABKCO] justify an award of attorney fees for all work incurred on behalf of Ms. Cooke in enforcing payment of royalty fees and obtaining royalty statements pursuant to Section 9 of the Royalty Agreement.

{¶ 47} Both Cooke and ABKCO initiated appeals. In the instant appeal, we address ABKCO's two[5] assignments of error:

> 1. The trial court erred in awarding attorney fees and expenses to Appellee pursuant to the terms of the indemnification provision contained in the Royalty Agreement.

> 2. Even if this Court were to construe the trial court's [o]rder on 9/9/21 as rendering judgment in favor of Cooke, the court should not have awarded any attorney fees or expenses incurred prior to the 9/9/21 Judgment Entry.

## II. Law and Analysis

{¶ 48} ABKCO's first assignment of error challenges the probate court's award of attorney fees and expenses to Cooke and challenges the validity of the

---

[5] ABKCO's brief did not specifically delineate its assignments of error as required by App.R. 16(A)(3). Nonetheless, we presume that the two subsection headings indicate ABKCO's assigned errors.

award in its entirety. The second assignment of error challenges the amount of fees should this court find that the award was valid under the Royalty Agreement.

{¶ 49} We begin with the few arguments that are undisputed. Both parties agree that Section 5 (Accounting) of the Royalty Agreement controls the award of fees and expenses relevant to this appeal, which reads:

> Should suit be instituted by [Denise] against ABKCO with respect to enforcement of the terms of this Agreement or payments thereunder, it is understood and agreed that any judgment which would be rendered in favor of [Denise] shall include the payment of reasonable attorney's fees incurred by [Denise].

{¶ 50} Both parties agree that Denise's interest in the Royalty Agreement has since been assigned to the reformed Trust, of which Cooke is a beneficiary. ABKCO has not raised any arguments about Cooke's authority to request attorney fees on behalf of the Trust or the reformed Trust. As such, for ease of reading, we consistently refer to "the reformed Trust" as the party entitled to receive attorney fees under Royalty Agreement. Both parties also agree that pursuant to Section 10 of the Royalty Agreement, interpretation of the Royalty Agreement is governed by and construed under the laws and judicial decisions of the state of New York. Finally, it is undisputed that Cooke has not personally incurred legal fees in this matter because her counsel represented her pro bono.

{¶ 51} A court's decision to award attorney fees is typically reviewed for an abuse of discretion. *Motorists Mut. Ins. Co. v. Brandenburg*, 75 Ohio St.3d 157, 160, 648 N.E.2d 488 (1995). But, if a trial court's alleged error stems from the court's interpretation of a contractual agreement, the decision is subject to de novo review.

*Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus (stating that the interpretation of a written contract is a question of law). Since both parties agree that fees in this matter are governed by Section 5 of the Royalty Agreement, we review the probate court's decision de novo, applying New York law.

{¶ 52} In its first assignment of error, ABKCO argues that the probate court misinterpreted the terms of Section 5 of the Royalty Agreement. ABKCO notes that the Royalty Agreement provides that reasonable attorney fees are warranted from "any judgment which would be rendered in favor of [the reformed Trust]." ABKCO argues that no judgments were rendered in Cooke's favor; she lost on summary judgment and fees were awarded to ABKCO, albeit less fees than those requested.

{¶ 53} By contrast, Cooke argues that she "prevailed," in this matter, as evidenced by the probate court's explicit findings that she "prevailed," even though summary judgment was rendered in favor of ABKCO. She also argues that she "prevailed" because the trial court only ordered that ABKCO could recoup a small fraction of their requested fees before distributing the withheld royalties to the reformed Trust. We note, however, that Section 5 does not use the word "prevailed," rather, it states "any judgment which would be rendered in favor of [the reformed Trust]."

{¶ 54} New York follows the general rule that attorney fees are incidents of litigation and may not be collected unless the award is authorized by an agreement between the parties. *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487,

491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). This rule exists to avoid placing barriers in the way of those desiring judicial redress and providing open access to courts. *A. G. Ship Maintenance Corp. v. Lezak*, 69 N.Y.2d 1, 5, 511 N.Y.S.2d 216, 503 N.E.2d 681 (1986). In fact, New York law prefers that "deterring malicious or vexatious litigation [should be achieved through] separate, plenary actions after the challenged proceedings have concluded." *Id.* at 618, citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). "[T]he court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." *Hooper* at 492. We must therefore look to rules of contract interpretation in reviewing Section 5 of the Royalty Agreement.

{¶ 55} New York State law governing contractual interpretation is generally harmonious with Ohio law. Contract interpretation requires a determination from the words and other objective manifestations of the parties "what must be done or forborne by the respective parties in order to conform to the terms of their agreements." *Tomhannock, LLC v. Roustabout Resources, LLC,* 33 N.Y.3d 1080, 2019 NY Slip Op 05058, 104 N.Y.S.3d 596, 128 N.E.3d 674. "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id.* "Where the terms of a contract are 'clear and unambiguous,' the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole." *Id.* The words and phrases used by the parties must, as in all cases involving contract

interpretation, be construed by their plain meaning. *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 245, 2014 NY Slip Op 07197, 997 N.Y.S.2d 339, 21 N.E.3d 1000.

{¶ 56} The probate court appears to have taken Cooke's view on these points. In its order granting Cooke's motion for interest and attorney fees, the probate court found that "the Reformed Andrea Marless Cooke Family Trust did in fact 'prevail' when the September 9 Judgment ordered ABKCO to pay the Reformed Trust $263,957.25 of Royalties owed to the Reformed Trust [] pursuant to the Royalty Agreement." (¶ 33, 8/24/2022 Judgment entry).

{¶ 57} The probate court interpreted Section 5 as follows:

The Court finds that the award of attorneys' fees under Section 5 of the Agreement does not require the Reformed Trust to have "prevailed" on its claim, so long as the award was made in an action where enforcement was sought. And in any event, the Reformed Trust is deemed to have prevailed pursuant to the September 9 order, where the Court has denied [ABKCO] recovery of the vast majority of the fees it sought, determined that [ABKCO] withheld royalties before it ever incurred fees subject to indemnification, and determined that the amount of royalties withheld were far in excess of [ABKCO]'s reasonable fees.

(¶ 40, 8/24/2022 Judgment entry).

{¶ 58} We agree with ABKCO; the trial court's interpretation of Section 5 does not interpret the plain meaning of the Royalty Agreement's terms. The plain text of Section 5 clearly provides that attorney fees are available if the following conditions are met: (1) the fees arose in a suit "instituted by [the reformed Trust] against ABKCO"; (2) the suit pertains to "the enforcement of the terms of the [Royalty] Agreement or payments thereunder"; and (3) any judgment results that

"would be rendered in favor of [the reformed Trust]." Section 5 does not use the word "prevailed," but instead requires that any judgment "would be rendered in favor of" the reformed Trust.

{¶ 59} ABKCO points this court to *Graybill v. Van Dyne*, 67 Misc.2d 228, 324 N.Y.S.2d 291 (Sup.Ct.1971), where the phrase "party in whose favor a judgment is entered," located in a statutory provision was interpreted. The *Graybill* Court cited *German-American Button Co. v. A. Heymsfeld, Inc.*, 170 A.D. 416, 156 N.Y.S. 223 (1915), and *Kriser v. Rodgers*, 195 A.D. 394, 186 N.Y.S. 316 (1921), for the proposition that "[w]here there is one plaintiff and one defendant, there can be but one prevailing party and but one judgment." *Graybill* at 232.

{¶ 60} After examining the statutory provision in *Graybill* versus the language in Section 5 of the Royalty Agreement, we conclude that there is a key distinction between the language used in the *Graybill* statute versus the Royalty Agreement. This distinction hinges on the Royalty Agreement using the term "any" judgment versus "a" judgment, implying that there may be numerous judgments throughout a case, as was the case here where Cooke (and/or the reformed Trust) was not successful on summary judgment, but was successful and did receive a judgment "in her favor" relating to her postjudgment motion for contempt complaining that ABKCO had not released the withheld royalties. Additionally, the *Graybill* analysis relied on a party "prevailing." The plain text of the Royalty Agreement does not require a party to "prevail," but rather, requires the reformed Trust to receive any "judgment in [its] favor."

{¶ 61} The New York State Civil Practice Law and Rules defines "judgment" as "the determination of the rights of the parties in an action or special proceeding and may be either interlocutory or final. A judgment shall refer to, and state the result of, the verdict or decision, or recite the default upon which it is based." N.Y.C.P.L.R. Law 5011. *See also* N.Y.C.P.L.R. Law 105 ("The word 'judgment' means a final or interlocutory judgment"); *Burke v. Crosson*, 85 N.Y.2d 10, 15, 623 N.Y.S.2d 524, 647 N.E.2d 736 (1995) (discussing the distinction between final and nonfinal judgments in a case).

{¶ 62} In the instant matter, the trial court entered judgment in favor of ABKCO on summary judgment, and in favor of ABKCO in awarding fees pursuant to Section 9, even though the fees were not as much as requested. There is no way to construe this as a "judgment in favor" of Cooke. In fact, the trial court explicitly denied Cooke's summary judgment motion. ABKCO was awarded fees pursuant to Section 9 of the Royalty Agreement, and even though the court did not award ABKCO the total requested amount of fees, that does not undermine or somehow indicate that ABKCO did not receive a judgment in its favor.

{¶ 63} After the trial court determined that ABKCO was entitled to fees to be taken from the withheld royalties, it ordered ABKCO to subtract the fees and release the royalties on September 9, 2021. ABKCO, however, did not immediately comply

and it became necessary for Cooke[6] to enforce the trial court's September 9, 2021 judgment.

{¶ 64} The postjudgment motion for contempt arose (1) out of a suit instituted by Denise/Cooke/the reformed Trust, (2) related to payments under the Royalty Agreement, and (3) resulted in a judgment in her favor. ABKCO was found in contempt of the court's September 9, 2021 order, but at the time this judgment was rendered, had already voluntarily released the withheld royalties on December 8, 2021. Cooke is thus entitled to all fees stemming from the efforts necessary to obtain the royalty payments to which she was entitled after the September 9, 2021 judgment was entered by the probate court, until December 8, 2021, when the withheld royalties were released.

{¶ 65} Based on the documentation submitted by Cooke's counsel, partners billed 41.8 hours and associates billed 12.3 hours in preparing the postjudgment motion for contempt, for total fees of $27,417.50. Cooke's counsel notes that these numbers included "the Motion and Reply Brief, including preparation, correspondence, and hearings."

{¶ 66} New York law does not permit a party to collect fees incurred by the preparation of the fee application, known as "fees on fees." *Rodriguez v. First Elite Mgt. Corp.*, Sup.Ct. No. 652082/2017, 2022 N.Y. Misc. LEXIS 24996, 2 (Dec. 19,

---

[6] In the probate court, ABKCO argued that Cooke did not have standing to seek enforcement of the judgment because the interested party is actually the Trust, not Cooke. ABKCO has abandoned this argument on appeal, and we deem it waived for purposes of appeal.

2022).  Unless "they are permitted in 'unmistakably clear' terms by the applicable fee-shifting statutory or contractual provision." *Id.*, citing *546-552 W. 146th St. LLC v. Arfa*, 99 A.D.3d 117, 2012 NY Slip Op 5895, 950 N.Y.S.2d 24, ¶ 4; *Valentini v. 326 E. 30th St. Owners, Inc.*, 76 Misc.3d 1207(A), 2022 NY Slip Op 50840(U), 173 N.Y.S.3d 479, ¶ 2 (Sup.Ct.).  So we are unable to affirm the fees relating to Cooke's counsel's preparation of the fee application.

{¶ 67} As a final point, we note that ABKCO does not dispute the pre- and postjudgment interests or the costs — only attorney fees awarded pursuant to Section 5.  As such, we do not address those amounts and conclude that since ABKCO did not pursue them, they are owed as determined by the trial court.

{¶ 68} ABKCO's first assignment of error is sustained in part and overruled in part; Cooke received a "judgment in her favor" as to the postjudgment efforts to obtain the royalties that ABKCO withheld.  She is therefore entitled to $27,417.50 in fees.  ABKCO's second assignment of error is sustained.

### III. Conclusion

{¶ 69} Judgment affirmed in part and vacated in part.  The trial court's award of attorney fees to Cooke's counsel in the amount of $440,647.50 is vacated except for $27,417.50 that we affirm, stemming from the judgment in Cooke's favor in her efforts to enforce the September 9, 2021 judgment.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

KATHLEEN ANN KEOUGH, A.J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, J., DISSENTING:

{¶ 70} I respectfully dissent from the majority opinion. I would affirm the trial court's award of attorney fees and costs to Cooke in its entirety. The trial court presided over this case for the entirety of its lengthy and convoluted history, and as such, was in the best position to determine an appropriate award of attorney fees. While I concur with the majority opinion that fees in this matter are governed by Section 5 of the Royalty Agreement, I disagree with the majority's conclusion that no judgments were rendered in favor of the reformed Trust because the probate court ordered ABKCO to pay the reformed trust $263,957.25 of royalties.

{¶ 71} I disagree with the vacation of the trial court's $440,647.50 award of attorney fees, save the $27,417.50 that the majority opinion leaves intact. Based on the reasons above, and in light of the extensive work done by Cooke's counsel, I believe that Cooke is entitled to the trial court's original award of attorney fees.

{¶ 72} For these reasons, I respectfully dissent.